**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In re:**

**GREAT SOUTHERN COPACKERS LLC** ***aka Great Southern Beverages*****,**

**Debtor.**

**CASE NO. 8:26-bk-07442-LER**

**CHAPTER 11**

***Subchapter V Election***

**Emergency hearing requested on September 9, 2026, at 11:00 a.m.**

_______________________________________________/

**DEBTOR'S EMERGENCY MOTION TO COMPEL THE LANDLORD TO PROVIDE IMMEDIATE ACCESS TO THE PREMISES AND TURNOVER PROPERTY OF THE ESTATE**

**GREAT SOUTHERN COPACKERS LLC (**the "Debtor"), as debtor in possession, by and through undersigned counsel, and pursuant to 11 U.S.C. §§ 105(a), 363, 541(a), 542(a), 1107(a), and 1184, moves for entry of an emergency order compelling Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC (collectively referred to as the "Landlord") to provide the Debtor with immediate access to the premises located at 3900 Frontage Road South, Lakeland, Florida 33815 (the "Facility") and to turn over personal property of the estate located there. In support of this Motion, the Debtor states as follows:

**Jurisdiction & Procedural Background**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. On August 20, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected treatment under Subchapter V. The

Debtor remains in possession of its property and is operating as a debtor in possession under 11 U.S.C. §§ 1107(a) and 1184.

3. On August 27, 2026, this Court conducted the initial hearing on the Debtor's first day motions, the Court recognized that the product and property remaining at the Facility presented a time sensitive issue, continued the hearing on the Debtor's cash collateral motion to September 9, 2026, and advised that the Debtor could seek emergency relief concerning access to the Facility before that date if necessary. The Debtor now seeks that relief because consensual access has not been obtained.

## Background

4. The Debtor manufactures, packages, and distributes beer and other beverages under the trade name Great Southern Beverages from a 75,000 square foot brewery and warehouse facility. Beverage production is presently paused because the Debtor lacks unrestricted access to the Facility.

5. The Facility contains substantial production and support equipment, inventory, raw materials, work-in-process, customer owned property, books and records, and other personal property used in the Debtor's brewing and contract-manufacturing business (collectively, the “Estate Property”). The Debtor seeks access only to property in which it asserts an ownership or possessory interest; any item that is genuinely disputed may be identified and segregated pending agreement or further order.

6. Climate First Bank ("CFB") asserts a security interest in substantially all of the Debtor's assets. An appraisal commissioned by CFB and filed with the Debtor's Case Management Summary at Doc. No. 10 values the production and support equipment at a gross orderly liquidation value of approximately $3,231,050 and a net orderly liquidation value of approximately

$2,648,750. The Debtor cites those figures only as evidence that the equipment is of substantial value and preserves all rights concerning ownership, valuation, attachment, perfection, priority, and extent of any asserted lien.

7. Before the Petition Date, the Landlord obtained a default judgment for possession in the commercial eviction action styled *Lakeland Industrial 1 LLC, et al. v. Great Southern Copackers LLC*, Case No. 2026CC006543A000BA, pending in the County Court for Polk County, Florida.

8. Before entry and execution of the possession judgment, the Debtor and the Landlord communicated concerning continued arranged access after the lockout. According to the Debtor's principal, the parties understood that the Debtor would be provided approximately 60 days of access to complete limited pending production, address customer property and work-in-process, and remove or relocate the Debtor's personal property. In reliance on that understanding, the Debtor did not oppose the Landlord's recovery of possession of the real property.

9. The sheriff changed the locks and the Debtor lost unrestricted access to the Facility on or about August 18, 2026. The Landlord did not provide the promised key or ongoing arranged access.

10. Since the lockout, the Debtor and its customers have attempted to obtain access. The Debtor requested access on multiple accounts pre-petition and Debtor's bankruptcy counsel has reached out to Landlord's state court counsel on multiple occasions but have not received a response. Those efforts have not produced access sufficient to protect or administer the Estate Property.

11. The Debtor has not executed an agreement surrendering, abandoning, or transferring ownership of the Estate Property to the Landlord, CFB, or any prospective

replacement tenant. Before the Petition Date, CFB circulated a proposed surrender agreement that contemplated a consensual Article 9 disposition, but the Debtor did not execute it.

12. The Facility contains refrigerated work-in-process and customer product that requires monitoring and timely attention. Customers are requesting the return or completion of their product, and the Debtor cannot respond adequately without access.

13. The Debtor can remotely monitor certain chillers, coolers, and related systems through an application while power, internet service, and the monitoring equipment remain operational. Remote monitoring does not permit the Debtor to inspect the product, verify the condition or completeness of the equipment, correct a failure, or perform the physical work necessary to preserve value.

14. The Debtor has received expressions of interest in the equipment at values that may permit payment of CFB and a recovery for junior creditors. It is also evaluating an auction or other competitive process. Any buyer, auctioneer, insurer, or secured creditor must be able to inspect and inventory the equipment before a transaction can proceed.

15. The Debtor's provisional cash collateral budget, which the Court approved on an interim basis, assumes that the Debtor will obtain access and use a limited workforce to preserve and complete pending production. Without access, the Debtor cannot implement the budget, use the relief already granted effectively, protect customer property, or commence an orderly marketing and removal process.

**Relief Requested and Basis for Relief**

16. The Debtor seeks an Order, pursuant to Section 542(a) of the Bankruptcy Code, compelling the Landlord to immediately provide the Debtor and its necessary personnel and representatives access to the Facility and to turn over possession and control of the Debtor's

equipment, inventory, work-in-process, books and records, and other property of the estate located there. The requested access includes access to and use of the Debtor's equipment necessary to preserve its property, complete pending production, and retrieve or remove its property from the Facility.

17. The Estate Property is not of inconsequential value or benefit. It is the Debtor's principal asset base, includes time-sensitive work-in-process and customer property, and may generate proceeds sufficient to pay secured claims and provide value to junior creditors. Access is a necessary first step to any turnover, preservation, production, relocation, or sale process.

18. A Chapter 11 bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Further, actions taken in violation of the automatic stay are void. *See United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) ("It is the law of this Circuit that '[a]ctions taken in violation of the automatic stay are void and without effect.'").

19. The importance of turnover as a remedy in this Chapter 11 case cannot be overstated. Congress included "orders to turn over property of the estate" among the "core" proceedings that bankruptcy judges "may hear and decide." 28 U.S.C. § 157(b)(2)(E). Indeed, this Court's "exercise of exclusive jurisdiction over all the debtor's property" is one of the "[c]ritical features of every bankruptcy proceeding." *In re Garcia,* 471 B.R. 324, 329 (Bankr. D.P.R. 2012) (quoting *Central Va. Comm. College v. Katz,* 546 U.S. 356, 363-64, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006)); *accord In re SE Materials, Inc.,* 467 B.R. 337 (Bankr. M.D.N.C. 2012).

20. Judge Delano recently had occasion to grant turnover relief upon the filing of an emergency motion when the circumstances dictated that immediate and irreparable injury would result if turnover of estate property was not compelled. *See In re B-Line Carriers, Inc.*, Case No. 8:20-bk-6034-CED, D.E. 57 (Bankr. M.D. Fla. Aug. 26, 2020) (Delano, J.) (granting debtor's emergency motion to compel bank to turn over property of the debtor's estate).

21. Section 105 also provides a mechanism to both acknowledge a debtor's turnover rights and hold violators of the automatic stay accountable. The Court may issue any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Orders for possession of property may be enforced through writs and orders under section 105(a). *Stone v. White (In re Stone)*, 1998 WL 1819081, at *4 (Bankr. D.C. Nov. 4, 1998) (addressing writs of possession issued to enforce turnover orders); *Toledano v. Kittay (In re Toledano)*, 299 B.R. 284, 299 (Bankr. S.D.N.Y. 2003) (holding that the trustee may direct the United States Marshals Service to effectuate the terms of the court's order by evicting all occupants from the premises where the debtor or any other individuals occupying property of the estate did not voluntarily vacate in accordance with the order). Second, the Court may, under § 105, hold violators of the automatic stay to account with an appropriate order, award of damages, or sanctions. *E.g.*, *In re Jove Eng'g. Inc. v. IRS*, 92 F.3d 1539 (11th Cir. 1996) ("If the automatic stay provision is violated, courts generally award damages under the separate statutory contempt power of § 105."). That is because § 105(a) "grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code," and courts liberally allow discretionary sanctions under § 105(a) of the Bankruptcy Code. *Unlimited Homes*,

2018 Bankr. LEXIS 494, at *6-7 (citing *Jove*, 92 F.3d at 1554); *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 195 (Bankr. M.D. Fla. 2003).

22. Under the circumstances the Debtor requests entry of an order compelling the Landlord to immediately provide the Debtor and its necessary personnel and representatives, access to the Facility and to turn over possession and control of the Debtor's personal property.

**Emergency Consideration is Necessary**

23. Local Rule 9013-1(d) permits an emergency hearing when, absent the requested relief, direct, immediate, and substantial harm will occur to an interest in property, the estate, or the Debtor's ability to reorganize. That standard is met here.

24. Absent immediate access, the estate faces direct and immediate harm from loss of estate property, equipment deterioration, missed customer or buyer deadlines, and potentially an impending transfer or use by a replacement tenant. The harm cannot be repaired merely by awaiting the continued hearing on September 9, 2026.

25. The requested initial inspection is minimally burdensome and preserves the status quo. It does not restore the Debtor to possession of the real property, require the Landlord to relinquish control of the building, determine lease rights, or authorize immediate dismantling of the production line. It permits the Debtor to perform the minimum acts necessary to preserve and administer property of substantial value.

**WHEREFORE,** the Debtor respectfully requests this Court enter an order: (i) granting the Motion and conducting an emergency hearing at the earliest date available and before **September 9, 2026**; (ii) compelling the Landlord to immediately provide access to the Facility and the Debtor's equipment for the purposes described above; (iii) compelling turnover to the Debtor of its property remaining at the Facility; and (iv) granting such other and further relief as the Court

deems appropriate.

**RESPECTFULLY SUBMITTED** this 1st day of September 2026.


/s/ Justin M. Luna
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
Catherine R. Choe, Esq.
Florida Bar No. 1022469
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
jluna@lathamluna.com
cchoe@lathamluna.com
bknotice1@lathamluna.com
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In re:**

**CASE NO. 8:26-bk-07442-LER**

**GREAT SOUTHERN COPACKERS LLC** ***aka Great Southern Beverages*****,**

**CHAPTER 11**

**Debtor.**

***Subchapter V Election***

_______________________________________/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the forgoing has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: **Great Southern Copackers LLC**, 3900 Frontage Rd. S, Lakeland, FL 33818; **Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC , c/o David L. Laurence, Esq., as Counsel for the Landlord,** 215 N. Federal Highway, Dania Beach, Florida 33004, David@LaurenceLegal.com; the parties entitled to receive CM/ECF noticing; the secured creditors and the twenty largest unsecured creditors as shown on the matrix attached hereto; **Subchapter V Trustee Michael C. Markham,** 400 N. Ashley Drive, Suite 310, Tampa, Florida 33602; and the **Office of the United States Trustee**, 501 E Polk Street, Tampa, Florida 33602; this 1st day of September 2026.

*/s/ Justin M. Luna*
Justin M. Luna, Esq.