UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Great Southern Copackers LLC
aka Great Southern Beverages,

Debtor.
_______________________________/

Case No. 8:26-bk-07442-LER

Chapter 11
Subchapter V Election

**CLIMATE FIRST BANK'S EXPEDITED MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1) AND (d)(2) WITH RESPECT TO ITS EQUIPMENT COLLATERAL AND FOR WAIVER OF THE 14-DAY STAY UNDER FED. R. BANKR. P. 4001(a)(4)AND LOCAL RULE 4001-1(c)(3)**

***EXPEDITED HEARING REQUESTED NO LATER THAN SEPTEMBER 18, 2026***

Climate First Bank ("CFB" or the "Secured Party"), a secured creditor of Great Southern Copackers LLC ("Great Southern" or the "Debtor"), by and through its undersigned counsel, moves this Court, pursuant to 11 U.S.C. § 362(d)(1) and (d)(2), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-1, for entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) to permit CFB to exercise its rights and remedies with respect to its equipment collateral, including completing a pending Article 9 sale of that collateral to a third-party buyer. In support of this Motion, CFB states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 362(d)(1) and (d)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

***The Debtor's Prepetition Obligations to CFB***

3. On or about September 18, 2025, the Debtor, together with its affiliate Brew Hub, LLC ("Brew Hub," and together with the Debtor, the "Obligors"), executed a Secured Promissory Note in favor of CFB in the original principal amount of $1,801,275.00 (**Exhibit 1**, the "Equipment Note"), together with a contemporaneous Accounts Receivable Purchasing Agreement (**Exhibit 2**, the "ARPA") and a Security Agreement of even date (**Exhibit 3**, the "Security Agreement").

4. Pursuant to the Security Agreement, the Obligors granted CFB a security interest in substantially all of their personal property, including, without limitation, all "equipment" as defined in the Uniform Commercial Code, together with all related books, records, and proceeds (the "Collateral"), to secure repayment of the Equipment Note and all other obligations arising under the ARPA and the other Transaction Documents (collectively, the "Obligations").

5. CFB perfected its security interest in the Collateral, including the Debtor's equipment (the "Equipment"), by filing UCC-1 financing statements, and its lien is a first-priority lien on the Equipment. CFB is also the first priority creditor on the Debtor's accounts. **Exhibit 4**, July 29, 2026 UCC Lien Search Results.

6. As of August 20, 2026 (the "Petition Date"), the outstanding amount owed by the Debtor to CFB under the Equipment Note and the ARPA, inclusive of principal, accrued and unpaid interest, and fees and expenses chargeable under the Transaction Documents, is at least $1,747,196.80 (**Exhibit 5**, Affidavit of Indebtedness), and continues to accrue interest, fees, and the collateral management and other charges provided for in the Equipment Note and the ARPA.

7. The Debtor is in default under the Equipment Note by, among other things, failing to make payments when due. The Debtor's last monthly installment payment under the Equipment Note was made in January 2026, and the Debtor has failed to make any further installment payments due since the January 2026 payment. In addition, the Debtor is in default of Section 11.5 of the ARPA by, among other things, ceasing its operations several weeks prior to the Petition Date.

8. A junior creditor, Breakout Capital, LLC, holds a subordinate security interest in the Debtor's assets pursuant to an Intercreditor Agreement and Amendment dated October 7, 2025 (**Exhibit 6**), under which CFB's lien on the Senior Creditor Collateral (defined therein to include the Equipment and accounts) is senior in all respects to Breakout Capital's lien, and Breakout Capital is barred from taking any enforcement action against the Senior Creditor Collateral unless and until CFB's Obligations are paid in full. Breakout Capital's subordinate debt is approximately $912,000.

***The Prepetition Landlord Lockout and Cessation of Operations***

9. Before the Petition Date, the Debtor's landlord, Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC (collectively, the "Landlord"), obtained a default judgment for possession against the Debtor in a commercial eviction proceeding styled *Lakeland Industrial 1 LLC, et al. v. Great Southern Copackers LLC*, Case No. 2026CC006543A000BA, pending in the County Court for Polk County, Florida (the "Landlord Tenant Action").

10. On or about August 18, 2026, the sheriff executed a writ of possession, changed the locks at the Debtor's facility located at 3900 Frontage Road South, Lakeland, Florida 33815 (the

"Facility"), and the Debtor lost unrestricted access to the Facility, including to the Equipment located there.

11. On August 20, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and elected treatment under Subchapter V.

12. By its own admission in its *Emergency Motion to Compel the Landlord to Provide Immediate Access to the Premises and Turnover Property of the Estate* [Doc 24] (the "Motion to Compel"), the Debtor represents, among other things, that (i) it has been locked out of the Facility since on or about August 18, 2026 and (ii) beverage production has halted because the Debtor does not have access to the Facility. According to the Motion to Compel, the Debtor only seeks a limited operation merely to complete and return customer product and to complete an orderly marketing and removal process. CFB has already completed a marketing process and is ready to proceed with closing on the Article 9 Sale with the Buyer.

13. Hence, the Debtor is not currently operating, is not generating revenue or cash flow from operations, does not contemplate resuming production other than for a limited purpose and was removed from the Facility pursuant to the writ of possession in the underlying Landlord Tenant Action.

14. The Equipment was appraised by Tiger Valuation Services, LLC in a machinery and equipment appraisal commissioned by CFB, effective as of July 23, 2025, and issued on August 22, 2025 (**Exhibit 7,** the "Appraisal"), which the Debtor referenced in, and attached as Exhibit "A" to, its Chapter 11 Case Management Summary [Doc. No. 10]. The Appraisal values the production and support Equipment at a gross orderly liquidation value of approximately $3,231,050 and a net orderly liquidation value of approximately $2,648,750. A copy of the Appraisal is attached hereto as **Exhibit 9**.



303539719v2

15. Upon information and belief, the Debtor does not currently maintain insurance on the Equipment or has failed to provide proof of insurance to CFB, its first priority secured creditor, despite CFB's entitlement to such proof under the Transaction Documents.

16. On August 18, 2026, there was an inspection of the Equipment at the Facility (the "August 2026 Inspection"). The August 2026 Inspection revealed that an entire bottling line that had been present at the Facility during CFB's inspection on May 21 and 22, 2026 (the "May 2026 Inspection") was missing from the Facility. That bottling line had an appraised forced liquidation value of approximately $135,000 and an appraised orderly liquidation value of approximately $178,000 as of the date of the prior inspection.

17. A detailed comparison of the equipment identified during the May Inspection and that was missing at the August 2026 Inspection, is identified in the Missing Equipment List attached hereto as **Exhibit 8**. The disappearance of significant collateral while the Debtor had custody of the Facility further demonstrates the ongoing diminution in value of CFB's collateral and the absence of adequate protection.

***The Pending Article 9 Sale and Imminent Loss of the Buyer***

18. Prior to the Petition Date, and as a direct consequence of the Debtor's default and cessation of operations, CFB had been proceeding toward a private, commercially reasonable disposition of the Equipment under Article 9 of the Uniform Commercial Code with a prospective buyer (the "Buyer"), on the terms summarized below (the "Article 9 Sale").

19. The terms of the Article 9 Sale provided the sale of all of the Debtor's equipment except for certain excluded equipment contained in the Excluded Equipment List attached hereto as **Exhibit 9** in exchange for a purchase price of $1,750,000.

20. CFB and the Buyer were on the verge of closing the Article 9 Sale and were preparing to do so on the Petition Date – all that was required to close was an execution of the

prepared and approved bill of sale and the wiring of the proceeds for the purchase. The filing of the Debtor's chapter 11 case on August 20, 2026, and the resulting imposition of the automatic stay under section 362(a) of the Bankruptcy Code, halted the Article 9 Sale before it could close.

21. Absent prompt relief from the stay, CFB reasonably believes the Buyer will withdraw from the transaction, and CFB will lose the benefit of a negotiated, commercially reasonable sale that it does not expect to be able to replicate on similar terms, given the ongoing deterioration of the Equipment, the unresolved landlord dispute, and general conditions in the market for used copacking and brewing equipment.

## RELIEF REQUESTED

22. By this Motion, CFB requests entry of an order, substantially in the form to be submitted, (a) granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2) to permit CFB to exercise its rights and remedies against the Equipment under the Security Agreement, the Equipment Note, and applicable non-bankruptcy law, including completing the Article 9 Sale and applying the proceeds to the Obligations; (b) waiving the 14-day stay of enforceability under Fed. R. Bankr. P. 4001(a)(4) and Local Rule 4001-1(c)(3); and (c) granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

### A. Cause Exists to Lift the Stay Under Section 362(d)(1)

23. Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis through a flexible, multi-factor balancing of the equities and hardships to the debtor, the estate, and the creditor seeking relief.

24. Courts routinely consider factors including, without limitation: (i) whether the debtor has any equity in the property and whether the property is necessary for an effective reorganization; (ii) whether the debtor is using the property in a reorganization effort or whether the case has become, in substance, a liquidation; (iii) whether the movant's interest in the collateral is being adequately protected against diminution in value; (iv) whether the debtor has the ability to provide adequate protection; (v) the good faith of the parties; (vi) whether the movant will suffer great prejudice from continuation of the stay as compared to any hardship to the debtor if the stay is lifted; and (vii) whether a foreclosure proceeding or private sale was well underway prior to the bankruptcy filing.

25. **Lack of Adequate Protection.** CFB's interest in the Equipment is not adequately protected. The Debtor is not operating, is generating no cash flow, and, pursuant to its *Emergency Motion to Use Cash Collateral* [Doc 14] does not propose to make adequate protection payments to CFB. CFB does not have proof of insurance covering the Equipment, and the Debtor has not provided any evidence that the Equipment is currently insured against loss, theft, or damage. The Equipment sits unmonitored and largely inaccessible at a Facility from which the Debtor was locked out prepetition, with no ongoing maintenance, insurance verification, or physical oversight beyond limited remote monitoring of certain refrigeration systems. By the Debtor's own admission, this remote monitoring does not permit inspection, verification of condition, or repair of the Equipment. Idle, unmaintained, uninsured, and unmonitored industrial and refrigeration equipment predictably depreciates and is subject to a materially heightened risk of loss, theft, or damage. Continuation of the stay in these circumstances leaves CFB's collateral position exposed to a continuing and uncompensated diminution in value.

26. **No Reorganization in Progress; Case Is In Substance a Liquidation.** The Debtor is not presently operating its business, is not generating revenue, and has not demonstrated that it

will be able to resume operations given the unresolved dispute over access to the Facility. There is accordingly no ongoing reorganization effort that the Equipment is presently serving, and no operating business to protect from disruption by lifting the stay. Under these circumstances, the equities weigh heavily in favor of allowing CFB to complete a private disposition of collateral that is not being used to generate value for the estate.

27. **Balance of Hardships and Prejudice to CFB.** CFB faces the imminent, concrete prospect of losing the Buyer and the negotiated Article 9 Sale if the stay is not promptly lifted. That harm is not speculative: the sale was on the verge of closing on the eve of the bankruptcy filing, and CFB reasonably anticipates the Buyer will not remain available indefinitely. By contrast, the Debtor and the estate suffer little, if any, cognizable hardship from stay relief, because the Debtor is not using the Equipment in any ongoing operations, has articulated no operative plan to resume production in the near term, and — to the extent the Equipment retains value in excess of CFB's claim — any surplus proceeds of a commercially reasonable sale would inure to the benefit of the estate and junior creditors in any event.

28. **Sale Process Well Underway Prepetition.** CFB's Article 9 Sale process, including identification of the Buyer and negotiation of the proposed transaction, was substantially advanced before the Petition Date. Courts recognize that cause exists to lift the stay where a foreclosure or private disposition process was well underway prepetition and the debtor's filing serves principally to disrupt, rather than to preserve, value. That is the case here.

29. **Good Faith and Timing of the Filing.** The Petition Date fell on the eve of the anticipated closing of the Article 9 Sale. Whatever the Debtor's motivations for the timing of its filing, the practical effect has been to interpose the automatic stay at the precise moment necessary to disrupt a pending, negotiated disposition of CFB's collateral, further supporting a finding of cause under section 362(d)(1).

**B. The Debtor Has No Equity in the Equipment and the Equipment Is Not Necessary for an Effective Reorganization Under Section 362(d)(2)**

30. Section 362(d)(2) requires the court to grant relief from the stay where (A) the debtor does not have equity in the property, and (B) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The moving creditor bears the burden on the question of equity, and the debtor bears the burden on all other issues, including necessity to an effective reorganization. 11 U.S.C. § 362(g).

31. **No Equity.** Based on the figures in the Appraisal (Exhibit 8), which the Debtor referenced in and attached to its Case Management Summary [Doc. No. 10], the Equipment has a gross orderly liquidation value of approximately $3,231,050 and a net orderly liquidation value of approximately $2,648,750. Against those values, the Debtor owes CFB at least $1,747,196.80 as of the Petition Date, which is secured by a first-priority lien on the Equipment. CFB is the first priority creditor on the Debtor's accounts, and its lien is senior to all other creditors, including Breakout Capital's subordinate lien for the Debtor's indebtedness to it of more than $900,000. On this record, the Debtor has no equity in the Equipment above CFB's secured claim.

32. **Not Necessary for an Effective Reorganization.** A showing of no equity is not sufficient by itself; the debtor must also demonstrate a reasonable possibility of a successful reorganization within a reasonable time, and that the collateral is necessary to that reorganization. Here, the Debtor is not operating, is not generating cash flow, has been locked out of its only production facility since before the Petition Date, and has not demonstrated — through a confirmable plan, projections, exit financing, or otherwise — a reasonable prospect of resuming operations and successfully reorganizing within a reasonable time. Equipment that is not presently being used, and that the Debtor has not shown it will be able to use in a viable reorganization, is

not "necessary to an effective reorganization" within the meaning of section 362(d)(2)(B). CFB accordingly is entitled to relief from the stay on this independent ground as well.

### C. Cause Exists to Waive the 14-Day Stay Under Fed. R. Bankr. P. 4001(a)(4) and Local Rule 4001-1(c)(3)

33. Fed. R. Bankr. P. 4001(a)(4) provides that an order granting a motion for relief from the automatic stay is stayed for 14 days after entry, unless the court orders otherwise. Given the imminent risk that CFB will lose the Buyer and the benefit of the Article 9 Sale if the effectiveness of any order is delayed, CFB requests that the Court waive the 14-day stay under Fed. R. Bankr. P. 4001(a)(4) and Local Rule 4001-1(c)(3) and direct that any order granting this Motion be effective immediately upon entry.

## RESERVATION OF RIGHTS

34. CFB reserves all rights to supplement this Motion, to submit additional evidence (including updated valuation, loan balance, and Buyer-related evidence) in advance of or at any hearing on this Motion, and to seek any further or different relief, including adequate protection pending a final hearing, sequestration or protection of the Equipment, or additional remedies available under the Bankruptcy Code, the Security Agreement, the Equipment Note, and applicable non-bankruptcy law. Nothing herein shall be construed as a waiver of any of CFB's claims, liens, rights, or remedies, all of which are expressly reserved.

## CONCLUSION

35. For the foregoing reasons, CFB respectfully requests that the Court enter an order (a) granting this Motion; (b) modifying and lifting the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2) to permit CFB to exercise its rights and remedies against the Equipment, including completion of the pending Article 9 Sale; (c) waiving the 14-day stay imposed by Fed. R. Bankr.

P. 4001(a)(4) and Local Rule 4001-1(c)(3); and (d) granting such other and further relief as is just and proper.

Dated: September 9, 2026

Respectfully submitted,

By: /s/ Alan R. Crane

Alan R. Crane, Esq.
GrayRobinson, P.A.
2255 Glades Road, Suite 301E
Boca Raton, FL 33431-7383
Office: (561) 368-3808
Fax: (561) 338-7532
E-Mail: alan.crane@gray-robinson.com
Florida Bar No. 963836

*Attorneys for Climate First Bank*

Docusign Envelope ID: 1AB1C62C-30D8-842A-8179-94997F323136

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: Great Southern Copackers LLC
aka Great Southern Beverages,

Debtor.

Case No. 8:26-bk-07442-LER

Chapter 11
Subchapter V Election

_______________________________________________/

**DECLARATION PURSUANT TO 28 U.S.C. § 1746.**

1. My name is Chad Kerr. I am over eighteen (18) years of age and am competent to testify as to the matters set forth herein. I am employed by Climate First Bank ("CFB") as Senior Vice President & Director of Structured Finance. I have personal knowledge of the facts set forth in this Declaration, or have acquired knowledge of such facts through my review of CFB's books and records maintained in the ordinary course of business, and if called upon to testify, I could and would competently testify to the matters stated herein.

2. CFB is a secured creditor of Great Southern Copackers LLC ("Great Southern" or the "Debtor"), which filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 20, 2026 (the "Petition Date"), Case No. 8:26-bk-07442-LER, in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

3. On or about September 18, 2025, the Debtor, together with its affiliate Brew Hub, LLC ("Brew Hub," and together with the Debtor, the "Obligors"), executed a Secured Promissory Note in favor of CFB in the original principal amount of $1,801,275.00 (the "Equipment Note"), together with a contemporaneous Accounts Receivable Purchasing Agreement (the "ARPA") and a Security Agreement of even date (the "Security Agreement," and together with the Equipment Note and the ARPA, the "Transaction Documents").

4. Pursuant to the Security Agreement, the Obligors granted CFB a security interest in substantially all of their personal property, including, without limitation, all "equipment" as defined in the Uniform Commercial Code, together with all related books, records, and proceeds (the "Collateral"), to secure repayment of the Equipment Note and all other obligations arising under the ARPA and the other Transaction Documents (collectively, the "Obligations").

5. CFB perfected its security interest in the Collateral, including the Debtor's equipment (the "Equipment"), by filing UCC-1 financing statements. CFB's lien on the Equipment is a first-priority lien. CFB is also the first-priority creditor on the Debtor's accounts.

6. As of the Petition Date, the outstanding amount owed by the Debtor to CFB under the Equipment Note and the ARPA, inclusive of principal, accrued and unpaid interest, and fees and expenses chargeable under the Transaction Documents, is at least $1,747,196.80, and continues to accrue interest, fees, and the collateral management and other charges provided for in the Equipment Note and the ARPA (collectively, the "Outstanding Indebtedness").

7. The Debtor is in default under the Transaction Documents by reason of, among other things, the following events of default:

a. The Debtor failed to make payments when due under the Equipment Note. The Debtor's last monthly installment payment under the Equipment Note was made in January 2026, and the Debtor has failed to make any further installment payments due since the January 2026 payment.

b. The Debtor is in default of Section 11.5 of the ARPA by, among other things, ceasing its operations several weeks prior to the Petition Date.

8. No payment, credit, offset, or other reduction has been applied to the Outstanding Indebtedness other than the payments and credits reflected in CFB's books and records, and no part of the Outstanding Indebtedness has been satisfied, released, or discharged.

9. A junior creditor, Breakout Capital, LLC, holds a subordinate security interest in the Debtor's assets pursuant to an Intercreditor Agreement and Amendment dated October 7, 2025, under which CFB's lien on the Senior Creditor Collateral (defined therein to include the Equipment and accounts) is senior in all respects to Breakout Capital's lien. Breakout Capital's subordinate debt is approximately $912,000.

10. Prior to the Petition Date, and as a direct consequence of the Debtor's default and cessation of operations, CFB had been proceeding toward a private, commercially reasonable disposition of the Equipment under Article 9 of the Uniform Commercial Code with a prospective buyer (the "Buyer") on the terms summarized below (the "Article 9 Sale"). The Article 9 Sale provided for the sale of all of the Debtor's Equipment, except for certain excluded equipment, in exchange for a purchase price of $1,750,000.

11. CFB and the Buyer were on the verge of closing the Article 9 Sale on the Petition Date. All that was required to close was execution of the prepared and approved bill of sale and the wiring of the purchase price proceeds. The filing of the Debtor's chapter 11 case on August 20, 2026, and the resulting imposition of the automatic stay under section 362(a) of the Bankruptcy Code, halted the Article 9 Sale before it could close.

12. Upon information and belief, the Debtor does not currently maintain insurance on the Equipment or has failed to provide proof of insurance to CFB, its first-priority secured creditor, despite CFB's entitlement to such proof under the Transaction Documents.

13. On August 18, 2026, there was an inspection of the Equipment at the Debtor's facility located at 3900 Frontage Road South, Lakeland, Florida 33815 (the "Facility"). That inspection revealed that an entire bottling line that had been present at the Facility during CFB's inspection on May 21 and 22, 2026 was missing from the Facility. That bottling line had an

appraised forced liquidation value of approximately $135,000 and an appraised orderly liquidation value of approximately $178,000.

14. The Equipment was appraised by Tiger Valuation Services, LLC in a machinery and equipment appraisal commissioned by CFB, effective as of July 23, 2025, and issued on August 22, 2025 (the "Appraisal"). The Appraisal values the production and support Equipment at a gross orderly liquidation value of approximately $3,231,050 and a net orderly liquidation value of approximately $2,648,750.

15. The facts set forth above are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 9, 2026, 2026.

Signed by:
Chad A. Kerr
40A5D1E82E02481...

Chad Kerr
Senior Vice President & Director of
Structured Finance
Climate First Bank