ORDERED.

**Dated: September 17, 2026**

Luis E. Rivera II
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: Case No. 8:26-bk-07442-LER

GREAT SOUTHERN COPACKERS LLC aka Great Southern Beverages,

Chapter 11
Subchapter V Election

Debtor.
______________________________________/

**AGREED INTERIM ORDER GRANTING IN PART AND DEFERRING IN PART DEBTOR'S EMERGENCY MOTION TO COMPEL THE LANDLORD TO PROVIDE IMMEDIATE ACCESS TO THE PREMISES AND TURNOVER PROPERTY OF THE ESTATE (Doc. No. 24)**

**THIS MATTER** came before the Court for hearing on September 9, 2026, at 11:00 a.m. (the "**Hearing**") for consideration of the Debtor's *Emergency Motion to Compel the Landlord to Provide Immediate Access to the Premises and Turnover Property of the Estate* (the "**Motion**"), filed by **GREAT SOUTHERN COPACKERS LLC** (the "**Debtor**") on September 1, 2026. The Motion seeks relief pursuant to 11 U.S.C. §§ 105(a), 363, 541(a), 542(a), 1107(a), and 1184, including immediate access to the premises located at 3900 Frontage Road South, Lakeland, Florida 33815 (the "**Premises**"), and turnover of personal property of the estate located at the Premises. The Court, having reviewed the Motion, and being advised that Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC (collectively, the "**Creditor**") agree to the relief set forth below, finds that entry of this Order is appropriate and in the best interests of the bankruptcy estate.

**Accordingly, it is ORDERED as follows:**

1. The Motion is **GRANTED** in part as set forth herein on an interim basis. All remaining relief requested in the Motion is deferred pending further agreement of the parties or order of the Court.

2. No later than two (2) business days after entry of this Order, the Creditor shall provide the Debtor with access to the Premises for the limited purposes authorized by this Order.

3. The Debtor's access shall be strictly limited to: (a) inspecting, inventorying, and accounting for the Debtor's personal property; (b) retrieving and taking possession of books, records, files, computers, electronic data storage devices, finished goods, inventory, raw materials, ingredients, packaging materials, and other personal property of the Debtor other than equipment; and (c) coordinating the release of finished products and customer-owned property in accordance with this Order and **Exhibit A** attached hereto.

4. This Order does not authorize: (a) continued operation of the Debtor's business from the Premises; (b) brewing, fermentation, production, packaging, manufacturing, or distribution activities; (c) completion of any brew in process, work in process, or production cycle; (d) continued storage of property at the Premises following the completion of the authorized access; or (e) removal of brewing systems, tanks, production equipment, fixed machinery, bottling or canning lines, trade fixtures, or any other equipment.

5. Access shall be available during normal business hours upon not less than twenty-four (24) hours' prior written request from the Debtor identifying the proposed date, time, anticipated duration of access, a written list identifying all persons authorized to enter the Premises, their relationship to the Debtor (i.e. member, officer, employee, contractor, vendor, distributor, customer, or other third party), the activities the persons are authorized to do while in the Premises, and the items the persons are authorized to remove from the Premises. The parties shall work cooperatively and in good faith to accommodate reasonable access requests. At no time

shall more than three (3) persons be present at the Premises without the Creditor's prior written consent. All entry to and exit from the Premises shall occur through such designated entrance(s) and exit(s) as the Creditor may reasonably direct, and all activities shall be subject to reasonable supervision by the Creditor's representative(s).

6. As a condition precedent to any access, at least one (1) business day prior to entry onto the Premises:

a. the Debtor shall provide certificates of insurance and supporting endorsements evidencing insurance coverage substantially consistent with the insurance requirements imposed under the parties' prepetition lease, including commercial general liability coverage naming Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, Lakeland Industrial 4 LLC, and The Becker Organization, LLC as additional insureds;

b. all third parties (i.e., contractor, vendor, distributor, customer, or other third party) shall provide certificates of insurance and supporting endorsements evidencing insurance coverage satisfactory to the Creditor; and

c. all persons shall execute the Creditor’s standard form of Access Agreement, a copy of which is attached hereto as **Exhibit B**.

No access shall be granted by Creditor absent compliance with the above conditions.

7. Any person operating a forklift or other material-handling equipment at the Premises shall be properly trained and certified to operate such equipment. Evidence of such certification shall be provided to the Creditor at least one (1) business day prior to entry onto the Premises. No uncertified person shall be permitted to operate a forklift or similar equipment at the Premises.

8. Subject to the requirements of Paragraph 6, the Creditor shall release the Debtor’s product inventory in accordance with **Exhibit A** attached hereto. Absent receipt and verification

of the information required by Paragraph 6, the Creditor shall not be required to release any product inventory to any party. The Debtor shall not dispose of, and shall maintain, any personal property removed from the Premises as set forth in **Exhibit A**.

9. Nothing in this Order shall be construed as reinstating any lease; creating, recognizing, or extending any tenancy; granting the Debtor any possessory, leasehold, or occupancy interest in the Premises; determining that the Debtor has any continuing right to use the Premises; or waiving any pre or postpetition claim of the Creditor arising from the Debtor's occupancy, eviction, storage of property, or use of the Premises. The Creditor and Debtor both reserve their rights related to any argument pertaining to any leasehold or tenancy interest on the Petition Date as of the Petition Date.

10. Any request for additional access, use of the Premises, storage of property, removal of equipment, operation of business activities, or other relief beyond that expressly authorized herein shall require further agreement of the parties or further order of this Court.

11. Nothing in this Order constitutes a determination regarding ownership of any personal property, equipment, raw materials, product inventory, or assets located at the Premises, nor does this Order determine the extent, validity, priority, or enforceability of any lien, claim, possessory interest, or other right asserted by any party.

12. Except as expressly provided herein, all rights, claims, defenses, remedies, causes of action, ownership claims, possessory claims, lien rights, administrative expense claims, and other interests of the Debtor, the Creditor, and all other parties in interest are fully preserved and reserved. For the avoidance of doubt, the Creditor expressly reserves any and all rights to assert, liquidate, and seek allowance and payment of administrative expense claims pursuant to sections 503 and 507 of the Bankruptcy Code, as well as any other claims, liens, charges, or rights of payment available under applicable law, arising from or related to the Debtor’s access to or use of the Premises, the storage, maintenance, protection, supervision, handling, or disposition of any

property, or any other actual and necessary costs, expenses, or benefits provided to or received by the Debtor or the estate. Nothing contained in this Order, nor the Creditor's compliance herewith, shall be construed as a waiver, release, admission, or limitation of any such rights, claims, remedies, or defenses.

13. The Court retains jurisdiction to interpret and enforce this Order.

14. This Order shall be immediately effective and enforceable upon entry.

**AGREED AND CONSENTED TO:**

LATHAM, LUNA, EDEN & BEAUDINE, LLP
Attorneys for the Debtor

/s/ Justin M. Luna
Justin M. Luna, Esq.
Florida Bar No. 0037131
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
jluna@lathamluna.com

BERGER SINGERMAN LLP
Attorneys for the Creditor

/s/ Amy Denton Mayer
Amy Denton Mayer, Esq.
Florida Bar No. 0634506
101 E. Kennedy Boulevard, Suite 1165
Tampa, FL 33602
Telephone: 813.498.3410
amayer@bergersingerman.com

###

Attorney Amy Denton Mayer is directed to serve a copy of this order on interested parties and file a proof of service within three (3) days of entry of the order.

# EXHIBIT A -- AUTHORIZED PRODUCT RELEASE

The products identified below shall be released to the customers specified below, provided, however, that any alcoholic beverages shall be released only to a properly licensed distributor and only after the Creditor has received the information and documentation required pursuant to Paragraph 6 of this Order.

| Customer's Legal Name | Product Description | Amount of Product | Location within the Premises |
|---|---|---|---|
| MAGA Beer | Finished beer product | 5 pallets | |
| MAGA Beer | Empty cans | 7 pallets | |
| Redskin Distribution | Finished product in kegs | 10 pallets | |
| Affect Vodka | Miscellaneous packaging materials | | |
| Affect Vodka | Finished product | 3 pallets | |
| Plug Play | Ingredients | 2 pallets | |
| Club 13 | Finished product | 21 pallets | |
| LOFB | Cans | 20 pallets | |
| Cookies | Finished product | 15 pallets | |
| Cookies | Empty cans | 3 pallets | |
| Blazey Susan | Cans | Roughly 40 pallets | |
| Blazey Susan | Liquid in tanks (for completed product) | Roughly 100 pallets | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| | | | |

**ADDITIONAL DEBTOR PROPERTY FOR RETRIEVAL (NOT FIXED EQUIPMENT)**

- Warming Tunnel
- Comac Keg Washer / Filler
- Stand-alone 6-head keg washer
- DE Filter
- Codi depalletizer
- SKA depalletizer
- 2 stand-up forklifts
- Small steam generator
- 2 filter cartridges
- Small blending cart
- Alfa Laval positive displacement pump

This Exhibit A may be supplemented by written agreement of the parties.

**EXHIBIT B**

**ACCESS AND INDEMNITY AGREEMENT**

THIS ACCESS AND INDEMNITY AGREEMENT (this "**Agreement**") is made as of ________, 2026, by and among LAKELAND INDUSTRIAL 1, LLC, LAKELAND INDUSTRIAL 2, LLC, LAKELAND INDUSTRIAL 3, LLC and LAKELAND INDUSTRIAL 4, LLC, each a ____________ limited liability company, as tenants in common, each having an address c/o The Becker Organization, LLC, 24 Church Street, Montclair, New Jersey 07042 (collectively, the "**Landlord**"), and Great Southern Copackers, LLC, a Florida limited liability company and a debtor in possession in Case No. 8:26-bk-07442-LER, having an address of ____________________________________ (the "**Licensee**").

**BACKGROUND**

A. The Landlord owns the real property and improvements commonly known as 3900 Frontage Road S., Lakeland, Florida 33815 (the "**Premises**"). Great Southern Copackers, LLC ("**GSC**") formerly occupied the Premises as tenant. GSC was evicted from the Premises on July 14, 2026, and the Landlord is in sole and exclusive possession of the Premises as of the date hereof. Nothing contained in this Agreement shall be construed as reinstating any lease or other occupancy agreement, or as granting GSC any possessory, leasehold or other interest in the Premises.

The Landlord, The Becker Organization, LLC, and each of their respective members, managers, partners, trustees, shareholders, directors, officers, employees, agents, property managers and lenders are hereby collectively deemed to be the "**Indemnified Parties**"). The Licensee has identified the following employees, contractors, subcontractors, vendors, customers, licensed distributors, and other parties, by full and proper legal name, as the only parties (each, an "**Approved Party**" and collectively, the "**Approved Parties**") the Licensee intends to have enter the Premises in connection with the Authorized Purposes:

1. ____________________________________________
2. ____________________________________________
3. ____________________________________________
4. ____________________________________________
5. ____________________________________________
6. ____________________________________________

No party other than the Approved Parties identified above shall be permitted to enter the Premises. The Licensee may supplement the foregoing list only with the Landlord's prior written consent and only upon satisfaction of the conditions set forth in Section 2 below.

B. The Licensee is entering into this Agreement to enable the Licensee and the Approved Parties (collectively, "**Invitees**") to enter the Premises for the Purposes set forth in the *Agreed Interim Order Granting in Part and Deferring in Part Debtor's Emergency Motion to*

*Compel the Landlord to Provide Immediate Access to the Premises and Turnover Property of the Estate* (the "**Turnover Order**") attached hereto as **<u>Exhibit A</u>** (collectively, the "**Authorized Purposes**").

## AGREEMENT

The Landlord and the Licensee hereby agree as follows:

1. <u>License to Enter Premises</u>. The Landlord hereby grants to the Licensee a temporary, nonexclusive, revocable license and permission to enter upon the Premises for the Authorized Purposes and for no other purpose. In any exercise of its rights under this Agreement, the Licensee shall not interfere with the use, operation, marketing or re-tenanting of the Premises. Any such access shall be subject to the terms of the Turnover Order. While on the Premises, the Licensee and all Approved Parties will comply with all applicable governmental laws and regulations. The Licensee shall restore any damage to the Premises or any adjacent property caused by such actions to the same condition as existed prior to the Licensee's actions and indemnify, defend, save and hold the Indemnified Parties and, as the case may be, their respective members and the partners, trustees, shareholders, directors, members, managers, officers, employees and agents (collectively, the "**Landlord Parties**") harmless of and from any and all claims, damages, losses, costs, expenses and liabilities (collectively, "**Claims**") which the Landlord or the Landlord Parties may suffer, or to which they may be subject or cause, by reason of, or in any manner relating to, the Authorized Purposes and the entry upon or use of the Premises by the Licensee or the Approved Parties. Prior to the Licensee's entry on the Premises, the Licensee shall furnish (or cause to be furnished) to the Landlord a certificate of insurance naming Lakeland Industrial 1, LLC, Lakeland Industrial 2, LLC, Lakeland Industrial 3, LLC and Lakeland Industrial 4, LLC, as tenants in common, and The Becker Organization, LLC (together with Landlord's property manager and lender) as additional insureds on a primary and non-contributory basis, as evidenced by ISO endorsement forms CG 20 10 and CG 20 37 (or their equivalents), on the Licensee's commercial general liability insurance policy, together with a contractual liability endorsement which insures the Licensee's indemnity obligations hereunder, issued by a company having a rating of A:IX or better, which such commercial general liability insurance coverage shall be in an amount of at least One Million Dollars per occurrence ($1,000,000). To the extent required by applicable law, the Licensee shall also maintain, with respect to its employees, if any, workers' compensation insurance in an amount required by law, together with employers' liability, with a waiver of subrogation endorsement by the insurance carrier in favor of the Indemnified Parties. The Licensee agrees to maintain such coverages for so long as this Agreement remains in effect. Notwithstanding any other provision in this Agreement or any related documents entered into between the Landlord and the Licensee, the repair, restoration and indemnification obligations set forth in this Section 1 shall survive the termination of this Agreement or the execution, delivery or termination of any related documents entered into between the Landlord and the Licensee.

2. <u>Special Notice</u>. All persons who enter upon the Premises pursuant to this Agreement do so at their own risk and shall comply with any and all reasonable safety instructions and directions of the Landlord. The Landlord shall have no duty to inspect the Premises and shall have no duty to warn any person of any latent or patent defect, condition or risk that may exist in the Premises or that might be incurred in the exercise of the rights granted herein.

(a) <u>Identification of Approved Parties; Privity of Contract</u>. Prior to any entry upon the Premises, the Licensee shall deliver to Landlord written updates to the list of Approved Parties identifying, by full and proper legal name, each employee, contractor, subcontractor, vendor,

customer, licensed distributor, and other party that the Licensee intends to have enter the Premises. No such party shall be permitted to enter the Premises unless and until (i) the Landlord has approved such party in writing and (ii) such party has executed and delivered to the Landlord the joinder appearing on the signature pages of this Agreement, pursuant to which such party becomes a signatory to this Agreement and agrees to be bound by the insurance, indemnity and all other obligations applicable to the Licensee hereunder. It is the express intention of the parties that the Landlord and the Indemnified Parties be in privity of contract with the Licensee and with each and every Approved Party entering the Premises, so that the insurance and indemnity obligations set forth herein may be enforced directly against any such party with respect to losses caused by it.

(b) Certificates of Insurance. The Licensee and each Approved Party shall each furnish to Landlord, prior to any entry upon the Premises, a certificate of insurance evidencing the coverages required under Section 1 above. Each such certificate shall name Lakeland Industrial 1, LLC, Lakeland Industrial 2, LLC, Lakeland Industrial 3, LLC and Lakeland Industrial 4, LLC, as tenants in common, and The Becker Organization, LLC as additional insureds on a primary and non-contributory basis, as evidenced by ISO endorsement forms CG 20 10 (ongoing operations) and CG 20 37 (products/completed operations), or their equivalents, and shall evidence a waiver of subrogation in favor of such additional insureds. Copies of the endorsements themselves shall be delivered together with each certificate. Such coverage shall be maintained for so long as such party has access to the Premises.

(c) No Waiver. The Landlord's acceptance of, or failure to object to, any schedule, certificate of insurance, endorsement or joinder, or the Landlord's permitting entry upon the Premises by any party, shall not constitute a waiver of, or estop the Landlord from enforcing, any requirement of this Agreement, and shall not limit the indemnity obligations of the Licensee or any Approved Party hereunder.

3. Liens. The Licensee shall not suffer or permit to be enforced against the Premises, or any part thereof, any mechanics, materialmen's, contractors' or subcontractors liens or any claim for damage arising from the Licensee's or any Approved Party's access to the Premises; and the Licensee shall pay or cause to be paid all of said liens, claims or demands before any action is brought to enforce the same against the Premises. The Landlord reserves the right at any time and from time to time to post and maintain on the Premises, or any portion thereof or improvement thereon, such notices of nonresponsibility or otherwise as may be necessary to protect the Landlord against liability for all such liens and claims. The obligations under this Section shall survive the termination of this Agreement or any related documents entered into between the Landlord and the Licensee.

4. Waiver of Jury Trial. THE LANDLORD AND THE LICENSEE EACH ACKNOWLEDGE THAT IT IS AWARE OF AND HAS HAD THE ADVICE OF COUNSEL OF ITS CHOICE WITH RESPECT TO ITS RIGHTS TO TRIAL BY JURY AND EACH PARTY DOES HEREBY EXPRESSLY AND KNOWINGLY WAIVE AND RELEASE ALL SUCH RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER (AND/OR AGAINST ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, OR SUBSIDIARY OR AFFILIATED ENTITLES) ON OR WITH REGARD TO ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LICENSEE'S ENTRY UPON THE PREMISES, AND/OR ANY CLAIM OF INJURY OR DAMAGE.

5. Cost of Enforcement. In the event any declaratory or other legal or equitable action is instituted between the Landlord and the Licensee in connection with this Agreement or the subject matter hereof, then the prevailing party shall be entitled to receive from the losing party all of its costs and expenses, including court costs and reasonable attorneys' fees. Notwithstanding any other provision in this Agreement or any related documents entered into between the Landlord and the Licensee, the obligations under this Section shall survive the termination of this Agreement or any related documents entered into between the Landlord and the Licensee.

6. Notices. Any communication, notice or demand of any kind whatsoever which either party may be required or may desire to give to or serve upon the other shall be in writing and delivered by overnight commercial delivery service, or personal delivery providing receipt for delivery, or by registered or certified mail, postage prepaid, return receipt requested, or by electronic transmission via a .pdf file, addressed to such party at the address set forth above. Any such communication, notice or demand shall be deemed to have been duly given or served on the date personally served or delivery is refused, if by overnight commercial delivery service or by personal service, or three (3) days after being placed in the U.S. mail, if mailed, or upon receipt of a confirmation notice before 5:00 p.m. Eastern Time, if by electronic transmission.

7. Miscellaneous. This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and all prior and contemporaneous agreements, representations and understandings of the parties hereto, oral or written, are hereby superseded and merged herein. No supplement, modification or amendment of this Agreement shall be binding unless in writing and executed by the parties hereto. In the event that all or any portion of any provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or unenforceable, such invalid, illegal or unenforceable provision or portion of a provision shall be valid and enforceable to the fullest extent. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar, nor shall any waiver be a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver. The headings of this Agreement are for purposes of reference only and shall not limit or define the meaning of the provisions hereof. Neither this Agreement nor a short form memorandum or assignment hereof shall be filed or recorded in any public office and any attorneys' fees or other costs incurred in clearing such cloud on title to the Premises shall be the recording party's responsibility. This Agreement may not be assigned by the Licensee, whether voluntarily or by operation of law, and any attempt to do so shall be null and void. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without reference to the conflict of law principles thereof. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument and may be executed by facsimile or other electronic means, and such facsimile or electronic signatures shall be binding as originals.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**LANDLORD:**
**LAKELAND INDUSTRIAL 1, LLC**
By: ______________________________
Name: ______________________________
Title: ______________________________

**LAKELAND INDUSTRIAL 2, LLC**
By: ______________________________
Name: ______________________________
Title: ______________________________

**LAKELAND INDUSTRIAL 3, LLC**
By: ______________________________
Name: ______________________________
Title: ______________________________

**LAKELAND INDUSTRIAL 4, LLC**
By: ______________________________
Name: ______________________________
Title: ______________________________

(collectively, as tenants in common)

**LICENSEE:**

**GREAT SOUTHERN COPACKERS, LLC**

By: ______________________________
Name: ______________________________
Title: ______________________________

## JOINDER BY APPROVED PARTY

The undersigned, an Approved Party identified in the Background section of the foregoing Access and Indemnity Agreement (the "**Agreement**") by and among Lakeland Industrial 1, LLC, Lakeland Industrial 2, LLC, Lakeland Industrial 3, LLC and Lakeland Industrial 4, LLC, as tenants in common, as the Landlord, and Great Southern Copackers, LLC, as the Licensee, hereby joins in the Agreement as a signatory thereto and agrees to be bound by all of the terms and conditions of the Agreement, including without limitation the insurance obligations and the indemnification, defense, repair and restoration obligations set forth in Sections 1 and 2 thereof, in each case as if the undersigned were named therein as the Licensee. The undersigned acknowledges that the Landlord and the Indemnified Parties are relying upon this Joinder in permitting the undersigned to enter the Premises, and that the Landlord and the Indemnified Parties may enforce such obligations directly against the undersigned.

Full legal name of Authorized Party:

_________________________________

By: _______________________________
Name: _____________________________
Title: _____________________________
Date: _____________________________