**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In re:**

**GREAT SOUTHERN COPACKERS LLC** ***aka Great Southern Beverages,***

**Debtor.**
_______________________________________/

**CASE NO.: 8:26-bk-07442-LER**

**CHAPTER 11**

***Subchapter V Election***

## NOTICE OF RULE 2004 EXAMINATION DUCES TECUM

**GREAT SOUTHERN COPACKERS LLC** (the "Debtor"), hereby gives notice that it will conduct the examination of **CLIMATE FIRST BANK** ("Climate First" or "Examinee"), through one or more representatives knowledgeable concerning the matters identified in **Schedule B**, on **Wednesday, October 21, 2026,** beginning **at 10:00 a.m. Eastern Time**, remotely by Zoom video conferencing. The examination will be recorded stenographically by a certified court reporter and will continue from day to day until completed or otherwise agreed. Zoom credentials will be provided separately before the examination.

Climate First shall produce the documents and electronically stored information identified in **Schedule A** on or before **Tuesday, October 13, 2026**, by secure electronic transmission to counsel for Debtor via email at jluna@lathamluna.com and cchoe@lathamluna.com. The production deadline precedes the examination so that the Debtor may review the responsive materials before conducting the examination.

**DATED** this 21st day of September, 2026.

/s/ Justin M. Luna
Justin M. Luna, Esq.
Florida Bar No. 037131
jluna@lathamluna.com
Catherine R. Choe, Esq.
Florida Bar No. 1022469

cchoe@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
201 S. Orange Avenue., Suite 1400
Orlando, Florida 32801
Telephone: (407) 481-5800 / Fax: (407) 481-5801
*Attorneys for the Debtor*

**SCHEDULE A**
**DEFINITIONS, INSTRUCTIONS, AND DOCUMENTS AND ESI TO BE PRODUCED**

## DEFINITIONS

(a) "And" as well as "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

(b) "Applicable Time Period" shall mean July 1, 2025 to the present.

(c) "Article 9 Disposition" means any proposed, contemplated, attempted, or completed public or private sale, acceptance, transfer, surrender, foreclosure, strict foreclosure, or other disposition of collateral under Article 9 of the Uniform Commercial Code or any agreement purporting to facilitate such a disposition.

(d) "Bankruptcy Case" means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Number: **8:26-bk-07442-LER.**

(e) "Brew Hub" means Brew Hub, LLC, including its current and former officers, managers, members, employees, representatives, agents, and persons acting on its behalf.

(f) "Climate First" means Climate First Bank, including its officers, directors, employees, agents, representatives, professionals, attorneys acting in a nonprivileged business capacity, affiliates, and persons acting on its behalf.

(g) "Communication," or any variant thereof, means every manner or means of disclosure, transfer, or exchange of information, whether oral, written, electronic, or otherwise, including emails, text messages, iMessages, WhatsApp or Signal messages, Microsoft Teams or Slack messages, direct messages, letters, memoranda, telephone calls, voicemails, videoconferences, meeting notes, and calendar entries.

(h) "Concerning," or "evidencing" or "relating to" or any variant thereof includes referring to, supporting, located in, considered in connection with, bearing, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, relating to, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting and being.

(i) "Debtor" or "Great Southern" means Great Southern Copackers LLC, also known as Great Southern Beverages, including its current and former officers, managers, members, employees, representatives, agents, and persons acting on its behalf.

(j) "Document(s)" means all materials within the full scope of the Federal Rules of Civil Procedure including but not limited to" all electronically stored information ("ESI"), all writings and recordings, including the originals and all non-identical copies, whether different from the original

by reason of any notation made on such copies or otherwise (including but without limitation to, emails and attachments, correspondence, text messages, memoranda, notes, diaries, minutes, statistics, letters, telegrams, minutes, contracts, reports, studies checks, statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including without limitation, computer files, servers, hard drives, and programs, tapes, cassettes, discs, recordings), including metadata.

(k) "Equipment" means the production and support equipment, machinery, tanks, packaging lines, rolling stock, fixtures, tools, and related personal property located at or associated with the Facility, including the assets identified in the machinery and equipment appraisal attached to the Debtor's Chapter 11 Case Management Summary at Doc. No. 10.

(l) "Facility" means the brewery, warehouse, and related premises located at 3900 Frontage Road South, Lakeland, Florida 33815, including any adjacent or related building, warehouse, storage, yard, utility, or support area used by the Debtor.

(m)"Landlord" means Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC, collectively and individually, including their members, managers, officers, employees, property managers, representatives, agents, affiliates, professionals, and persons acting on their behalf.

(n) "Proposed Transaction" means any proposed, contemplated, attempted, or completed lease, occupancy arrangement, purchase, sale, transfer, surrender, assignment, Article 9 Disposition, in-place disposition, financing, or other transaction involving the Facility, the Equipment, the Debtor's inventory or work-in-process, or any portion of the Debtor's business or assets.

(o) "Unibrew" means the prospective replacement brewery operator referred to by the parties as "Unibrew," together with its exact legal entity, parent entities, subsidiaries, affiliates, officers, directors, employees, agents, representatives, professionals, and persons acting on its behalf.

(p) "You" or "your" means Climate First Bank and its current officers, employees, agents, consultants, and other representatives, but only as to Documents within Climate First's possession, custody, or control. The term includes counsel only to the extent counsel acted in a nonprivileged business or transactional capacity.

## **INSTRUCTIONS**

(a) These Requests seek Documents existing as of the date production is completed. Climate First shall supplement its production as required by applicable law, agreement of the parties, or order of the Court.

(b) These discovery requests are not intended to be duplicative. All requests should be responded to fully and to the extent not covered by other requests. If there are documents that are responsive to more than one request, please note and produce each such document first in response to the request that is more specifically directed to the subject matter of the particular document.

(c) Pursuant to Federal Rules of Civil Procedure, all documents must be produced as they are kept in the usual course of business or must be organized and labeled to correspond to the categories of documents requested below. Each and every request for a document or documents to be produced requires production of the document, in its entirety, without abbreviation or expurgation.

(d) Any word written in the singular herein shall be construed as plural or vice versa when necessary to facilitate the response to any request.

(e) Whenever reference is made to a person, it includes any and all of such person's principals, employees, agents, attorneys, consultants, and other representatives.

(f) Produce Documents as they are kept in the usual course of business or organize and label them to correspond to the numbered requests below.

(g) Produce email messages with their attachments and family relationships preserved. Produce email in .msg, .eml, or another reasonably usable native format, or as searchable PDF files that display the sender, recipients, date, time, subject, and attachment names.

(h) Produce text messages and other mobile or messaging-platform Communications in native export format or as legible, searchable files showing the participants, date, time, and full message thread. Include attachments, photographs, videos, reactions, and linked files.

(i) Produce spreadsheets, databases, accounting files, presentations, photographs, audio recordings, and video recordings in native format. Produce other electronically stored Documents as searchable PDF files with reasonably available metadata preserved.

(j) Do not deduplicate across custodians in a manner that obscures who possessed or received a responsive Document. Exact duplicate Documents within the same custodian's files may be produced once.

(k) If any portion of a Document is redacted, identify the basis for each redaction. Do not redact information merely because it is nonresponsive if the redaction would obscure the meaning, context, sender, recipient, date, or attachment relationship of responsive information.

(l) If a responsive Document is withheld based on privilege, work product, or another protection, provide a privilege log identifying the date, author, sender, recipients, general subject matter, protection asserted, and sufficient information to assess the claim, without disclosing the protected substance.

(m) If a responsive Document once existed but has been lost, destroyed, deleted, discarded, overwritten, or is otherwise unavailable, identify the Document, its last known custodian, the date and circumstances of its loss or destruction, and any applicable retention or deletion policy.

(n) If no Documents responsive to a request exist after a reasonable search, state that fact in writing. If only part of a request is objectionable, produce all nonobjectionable responsive Documents.

(o) Nothing in these requests seeks privileged legal advice. Business Communications involving counsel remain responsive to the extent they are not privileged.

(p) The exact legal identity of any person or entity referenced by a trade name, shorthand name, affiliate name, or misnomer shall not limit the scope of production. Produce responsive Documents in the possession, custody, or control of the responding entity and its agents.

**Documents and Things to be Produced**

1. All Documents comprising the loan, underwriting, administration, collateral, and workout files for the financing extended by Climate First to Great Southern and Brew Hub, including all applications, approval memoranda, commitment letters, loan agreements, promissory notes, accounts-receivable purchasing agreements, security agreements, guaranties, amendments, waivers, forbearance agreements, default notices, acceleration notices, payoff statements, payment histories, account statements, and written modifications.

2. All UCC financing statements, amendments, assignments, continuations, terminations, fixture filings, mortgages, deposit-account control agreements, landlord waivers, collateral-access agreements, intercreditor or subordination agreements, and other Documents on which Climate First relies to establish attachment, perfection, priority, control, or enforcement rights in any asset of Great Southern or Brew Hub.

3. Documents sufficient to identify each category of collateral in which Climate First asserts a security interest, the debtor or owner of each category, the document creating the asserted interest, the method and date of perfection, and the amount Climate First contends is secured by that collateral.

4. All collateral schedules, fixed-asset lists, borrowing-base reports, field examinations, inspection reports, inventory reports, appraisals, photographs, videos, serial-number lists, or other Documents identifying or describing the Equipment or other asserted collateral.

5. All Communications between Climate First and Great Southern, Brew Hub, Jeremy Roberts, or their representatives concerning default, acceleration, collateral, access to the Facility, removal of Equipment, alleged missing Equipment, surrender, abandonment, foreclosure, an Article 9 Disposition, Unibrew, or any Proposed Transaction.

6. Every draft, version, attachment, transmittal email, internal approval, redline, comment, and Communication concerning the proposed June 8, 2026 Surrender Agreement, including Documents concerning why Climate First requested the agreement and why it was not executed.

7. All Communications between Climate First and the Landlord concerning Great Southern, Brew Hub, Jeremy Roberts, the Facility, the Equipment, access, possession, abandonment, surrender, ownership, title, landlord liens, fixtures, an Article 9 Disposition, Unibrew, a replacement tenant, or any Proposed Transaction.

8. All Communications between Climate First and Unibrew, or any other prospective purchaser, tenant, brewery operator, or user of the Equipment, concerning the Debtor, the Facility, the Equipment, a lease, acquisition, use, financing, or any Proposed Transaction.

9. All Documents and Communications concerning the introduction, referral, or exchange of contact information between Climate First and Unibrew or any other prospective purchaser, replacement tenant, or user of the Equipment.

10. All Documents concerning any proposed, contemplated, attempted, or completed Article 9 Disposition of the Equipment or other collateral, including internal approvals, engagement letters, marketing plans, sale notices, notices under Article 9, waivers of notice, advertisements, bid procedures, bidder lists, bids, offers, purchase agreements, bills of sale, closing statements, receipts, wire confirmations, and Documents reflecting the application of proceeds.

11. Documents sufficient to identify the proposed or actual purchaser in any Article 9 Disposition or Proposed Transaction, the purchase price and other consideration, whether a sale was

completed, whether title or possession was transferred, whether any payment was made, and the present status of the transaction.

12. All Documents reflecting notice of any Article 9 Disposition to Great Southern, Brew Hub, Jeremy Roberts, any guarantor, the Landlord, RSMG Inc., any other secured party, or any other person entitled to notice, and Documents reflecting the date and method of each notice.

13. All Documents concerning the commercial reasonableness of any proposed or completed disposition, including valuation analyses, marketing efforts, solicitation of bids, comparison of offers, expected removal costs, expected in-place value, and the reasons for selecting or favoring any purchaser or transaction structure.

14. The complete file concerning the Tiger appraisal dated July 23, 2025, including the engagement, instructions, asset lists provided to Tiger, field notes, photographs, drafts, Communications with the appraiser, internal analyses, and Documents reflecting how Climate First used or shared the appraisal.

15. All other appraisals, valuations, broker opinions, auction estimates, purchase offers, expressions of interest, or analyses concerning the Equipment, the Facility as an operating brewery, or any Proposed Transaction.

16. All Documents supporting or concerning any representation that Climate First owns, holds title to, or had acquired ownership of the Equipment, as distinguished from asserting a security interest in the Equipment.

17. All Documents and Communications concerning any report, suspicion, or allegation that Equipment or collateral was missing, removed, concealed, transferred, damaged, substituted, or otherwise unavailable, including the source of the report and any investigation, inspection, or follow-up.

18. All nonprivileged internal Communications, credit memoranda, workout memoranda, committee materials, or strategy Documents concerning the Equipment, its value, the Debtor's equity,

the possibility of a surplus or deficiency, the Landlord, Unibrew, an Article 9 Disposition, or alternatives to a sale to Unibrew.

19. All nonprivileged credit memoranda, workout memoranda, collateral analyses, valuation analyses, committee presentations, committee minutes, approval materials, and other ordinary-course business records presented to or considered by any Climate First decision-maker concerning the value or disposition of the Equipment, the possibility of a surplus or deficiency, any transaction involving the Landlord or Unibrew, or alternatives to an in-place disposition.

20. All postpetition nonprivileged Communications between Climate First and the Landlord, Unibrew, or any other prospective purchaser, tenant, auctioneer, appraiser, or liquidator concerning the possession, preservation, valuation, marketing, use, sale, transfer, or future disposition of the Equipment or any Proposed Transaction.

21. Documents sufficient to identify each Climate First officer, employee, agent, professional, or committee member who participated in or had material knowledge of the Great Southern credit, the Tiger appraisal, the Surrender Agreement, communications with the Landlord or Unibrew, any Article 9 Disposition, or any Proposed Transaction.

## SCHEDULE B

## MATTERS FOR EXAMINATION

Climate First's representative should be prepared concerning:

1. The financing and collateral documents;
2. The collateral in which Climate First asserts a lien;
3. Attachment, perfection, priority, and control;
4. The Tiger appraisal and Equipment schedules;
5. The proposed Surrender Agreement;
6. Communications with Great Southern, the Landlord, and Unibrew;
7. Any proposed, attempted, or completed Article 9 disposition;
8. The proposed purchaser, price, consideration, notices, and transaction status;
9. Any representation that Climate First owned or held title to the Equipment;
10. Reports of allegedly missing Equipment;
11. Application of proceeds, payoff, fees, surplus, and junior interests; and
12. Postpetition plans concerning possession, preservation, sale, or disposition of the Equipment.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO. 8:26-bk-07442-LER** |
| **GREAT SOUTHERN COPACKERS LLC** ***aka Great Southern Beverage*** | **CHAPTER 11** |
| | ***Subchapter V Election*** |
| **Debtor.** | |

______________________________/

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the **NOTICE OF RULE 2004 EXAMINATION**, together with any exhibits, has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: **Great Southern Copackers LLC**, 3900 Frontage Rd. S, Lakeland, FL 33818; **CLIMATE FIRST BANK**, c/o Alan R. Crane, Esq., GrayRobinson, P.A., 2255 Glades Road, Suite 301E, Boca Raton, FL 33431-7383; all parties entitled to receive electronic noticing via CM/ECF; the **Subchapter V Trustee Michael C. Markham**, 400 N. Ashley Drive, Suite 3100, Tampa, Florida 33602; and **Office of the United States Trustee**, 501 E Polk Street, Tampa, Florida 33602; this 21st day of September 2026.

/s/ Justin M. Luna
Justin M. Luna, Esq.