**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: **Case No. 8:26-bk-07442-LER**

**GREAT SOUTHERN COPACKERS LLC** Chapter 11, Subchapter V
a/k/a Great Southern Beverages,

Debtor.
_______________________________________/

**FORMER LANDLORD'S LIMITED OBJECTION TO DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DESIGNATION OF A STALKING HORSE BIDDER AND APPROVING BIDDING AND AUCTION PROCEDURES; (II) SCHEDULING BID DEADLINES, AN AUCTION, AND A FINAL SALE HEARING; (III) APPROVING THE FORM AND MANNER OF SALE NOTICE; (IV) AUTHORIZING THE SALE OF EQUIPMENT FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (V) GRANTING RELATED RELIEF [Doc. 61]**

Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC, as tenants in common (collectively, "Lakeland Industrial"), by and through undersigned counsel, files this limited objection to the *Debtor's Expedited Motion for Entry of an Order (I) Authorizing Designation of a Stalking Horse Bidder and Approving Bidding and Auction Procedures; (II) Scheduling Bid Deadlines, an Auction, and a Final Sale Hearing; (III) Approving the Form and Manner of Sale Notice; (IV) Authorizing the Sale of Equipment Free and Clear of Liens, Claims, Encumbrances, and Interests; and (V) Granting Related Relief* [Doc. 61] (the "Sale Motion") and in support thereof states as follows:

## INTRODUCTION

Lakeland Industrial does not oppose a prompt sale of the Debtor's brewing and production equipment (the "Equipment") if the sale: (i) satisfies Climate First Bank's secured claim; (ii) pays all allowed administrative expenses in full, including specifically the claim filed by Lakeland Industrial; and (iii) produces a meaningful net benefit for unsecured creditors.

Lakeland Industrial objects to the Sale Motion because the economics of the proposed stalking horse transaction do not accomplish those objectives. The Debtor seeks authority to sell the Equipment free and clear pursuant to 11 U.S.C. § 363 based upon a stalking horse purchase price of $2,200,000. Yet the Debtor's own appraisal [Doc. No. 10] values the Equipment at a net orderly liquidation value of $2,648,750 and a gross orderly liquidation value of $3,231,050. Thus, the stalking horse floor is approximately $448,750 below the Debtor's stated net orderly liquidation value and more than $1,000,000 below its gross orderly liquidation value.

The problem does not end there. The proposed transaction also permits the successful purchaser to leave the Equipment in Lakeland Industrial’s Premises for up to sixty (60) days after closing. During that period, Lakeland Industrial’s costs of preserving, storing, and facilitating access to the Equipment continue to accrue as an administrative expense of the estate. Accordingly, the sale structure itself guarantees the continued accrual of the estate's largest administrative liability long after the sale closes.

Lakeland Industrial's administrative expense claim accrues at no less than $99,352.24 per month. Assuming accrual from the August 20, 2026, Petition Date through the expiration of the purchaser's proposed post-closing removal period, Lakeland Industrial’s administrative expense claim approaches approximately $437,000 through year-end. Once those costs are accounted for, the economic advantage of the proposed $2,200,000 stalking horse bid largely disappears.

Indeed, after accounting for the continuing administrative burn, the estate is left with economics that are materially indistinguishable from the prepetition Article 9 disposition previously arranged by Climate First Bank for approximately $1,700,000. Unlike the proposed sale, however, the Article 9 transaction contemplated an in-place acquisition, immediate

elimination of storage costs, cessation of ongoing administrative expense accruals, and a long-term tenancy for the Premises.

The issue before the Court is therefore not whether $2,200,000 exceeds $1,700,000 in the abstract. The issue is whether the proposed transaction creates a meaningful net benefit for the estate after accounting for the costs incurred to preserve, store, insure, and ultimately remove the Equipment. On the present record, the Debtor has not demonstrated that the proposed sale will pay Climate First Bank and all administrative claims in full while also generating a material recovery for unsecured creditors.

Accordingly, Lakeland Industrial respectfully submits that the Sale Motion should be denied. Alternatively, any sale should be conditioned upon adequate protection of Lakeland Industrial's interests, including payment of accrued and accruing administrative expenses, a substantially shortened, firm deadline for removal of the Equipment from the Premises, and a deposit of at least ten percent (10%) of the purchase price to protect against the accrual of administrative expense claims.

## BACKGROUND

7. On or about May 9, 2025, the Debtor and Lakeland Industrial entered into a lease for the property at 3900 Frontage Road South, Lakeland, Florida 33815 (the "Premises").

8. After the Debtor defaulted, the County Court for the Tenth Judicial Circuit in and for Polk County, Florida (Case No. 2026CC006543A000BA) entered a *Default Final Judgment for Commercial Eviction* and issued a *Writ of Possession* on July 14, 2026.

9. On or about August 18, 2026, the Polk County Sheriff changed the locks and returned possession of the Premises to Lakeland Industrial. Lakeland Industrial was in possession of the Premises before this case was filed.

10. The Debtor filed this Chapter 11, Subchapter V case on August 20, 2026 (the "Petition Date").

11. The Debtor's production and brewing equipment (the "Equipment") remains in Lakeland Industrial's Premises.

12. On September 1, 2026, the Debtor filed an *Emergency Motion to Compel the Landlord to Provide Immediate Access to the Premises and Turnover Property of the Estate* [Doc. No. 24] (the "Motion to Compel"). The Motion to Compel requested "access to and use of the Debtor's equipment necessary to preserve its property, complete pending production, and retrieve or remove its property from the Facility." Doc. No. 24 at paragraph 16.

13. On September 18, 2026, the Court entered an *Agreed Interim Order Granting in Part and Deferring in Part Debtor's Emergency Motion to Compel the Landlord to Provide Immediate Access to the Premises and Turnover Property of the Estate* [Doc. No. 49]. The order granted the Debtor access to the Premises for limited purposes subject to the express terms of the order and the attached Access and Indemnity Agreement and reserved Lakeland Industrial's right to seek allowance and payment of an administrative expense claim for preserving and storing estate property.

14. On September 16, 2026, Lakeland Industrial filed an *Application for Allowance and Payment of Monthly Administrative Expense Claim Under 11 U.S.C. § 503(b)* [Doc. No. 43] (the "Lakeland Industrial Administrative Claim") seeking allowance and payment of an administrative expense claim for preservation and storage of property of the estate totaling at least $99,352.24 per month, comprised of: Building Rent of $65,233.34; Real Estate Taxes of $12,111.86; Insurance of $5,500.00; Utilities of $15,000.00 (estimated); and Industrial Park CAM of $1,507.04, plus hourly Cushman & Wakefield facility-management charges ($150 per hour for the property

manager, $100 per hour for the maintenance technician). The Lakeland Industrial Administrative Claim continues to accrue through either an in-place sale of the Equipment approved by Lakeland Industrial or removal of the Equipment from the Premises.

15. On September 25, 2026, the Debtor filed the Sale Motion seeking Court approval to sell the Equipment free and clear under §§ 363(b), (f), (k), and (m). The Sale Motion designates E-Town Marketing & Distributing, LLC as the stalking horse purchaser at a purchase price of $2,200,000 with a $50,000 deposit and a minimum competing bid of $2,250,000, on a compressed timetable: a bid-procedures hearing on October 14, 2026; a sale-objection deadline of October 20, 2026; a bid deadline of October 21, 2026; an auction on October 23, 2026; a final sale hearing on October 26, 2026; and a closing on or before October 28, 2026. If approved, the Sale Motion provides the purchaser with sixty (60) days after closing to remove the Equipment from the Premises at the purchaser's expense.

16. Prior to the Petition Date, Climate First Bank arranged an in-place Article 9 sale of the Equipment to Unibrew for a purchase price of $1,700,000 with Unibrew entering into a fifteen-year lease with Lakeland Industrial for the Premises. The Debtor's bankruptcy filing interrupted that disposition.

17. At the September 23, 2026 hearing on the Debtor's Motion to Compel, the Debtor vigorously advocated for an expedited sale process, representing to the Court that a prompt sale would maximize value, mitigate ongoing costs, and produce a result materially superior to the prepetition disposition arranged by Climate First Bank. Consistent with those representations, the Debtor sought a sale process culminating in a closing approximately thirty (30) days later. The Sale Motion, however, abandons that rationale in a material respect. Although the proposed timeline contemplates a closing on or before October 28, 2026, the stalking horse purchaser is

permitted to leave the Equipment in the Premises for an additional sixty (60) days after closing. Thus, while the Debtor continues to characterize the transaction as an expedited sale, the practical reality is that the Equipment may remain in place until the end of December 2026, resulting in the continued accrual of substantial administrative expenses. The Sale Motion therefore fails to reconcile the Debtor's prior insistence upon expedition with a transaction structure that effectively extends the status quo for two additional months after closing.

18. Moreover, the Sale Motion does not establish that the proposed transaction will satisfy Climate First Bank's claim, pay all administrative expenses in full including the Lakeland Industrial Administrative Claim, and provide a meaningful benefit to unsecured creditors. To the contrary, the Debtor acknowledges that payoff information and lien analysis remains ongoing and further admits that storage costs, insurance costs, utilities, access expenses, and related administrative expenses continue to accrue while delays erode value. Given that the proposed sale permits the purchaser to leave the Equipment at the Premises for up to sixty (60) days after closing, it ensures the continued accumulation of substantial administrative expenses even after consummation of the sale.

## ARGUMENT

### A. The Proposed Sale Fails To Demonstrate That It Maximizes Value or Produces a Meaningful Net Benefit to the Estate

19. A sale outside the ordinary course of business requires a sound business justification, adequate notice, good faith, and a fair and reasonable price. 11 U.S.C. § 363(b)(1). The Court has an independent obligation to determine whether the proposed transaction maximizes value for the benefit of the estate and creditors and may not simply defer to the Debtor's business judgment. *In re Country Manor of Kenton, Inc.*, 172 B.R. 217 (Bankr. N.D. Ohio 1994); *In re W.A. Mallory Co.*, 214 B.R. 834 (Bankr. E.D. Va. 1997).

20. Lakeland Industrial does not oppose a prompt sale that pays Climate First Bank, satisfies all allowed administrative expenses including the Lakeland Industrial Administrative Claim, and produces a meaningful recovery for unsecured creditors. The proposed stalking horse transaction, however, has not been shown to accomplish those objectives.

21. The Debtor's own appraisal values the Equipment at a net orderly liquidation value of $2,648,750 and a gross orderly liquidation value of $3,231,050. The proposed stalking horse purchase price of $2,200,000 falls approximately $448,750 below the Debtor's stated net orderly liquidation value and more than $1,000,000 below its gross orderly liquidation value.

22. More fundamentally, a sale cannot be evaluated solely by reference to gross purchase price. The relevant inquiry is whether the transaction creates meaningful net value for the estate after accounting for the costs required to preserve and realize that value. Here, the Debtor seeks approval of a transaction that not only proposes a purchase price below its own appraisal, but also affirmatively extends the accrual of substantial administrative expenses through the purchaser's sixty-day post-closing removal period.

23. Consequently, the Sale Motion fails to demonstrate that the proposed transaction will maximize value, satisfy administrative liabilities, and generate a meaningful distribution to unsecured creditors as required under § 363(b).

### B. The Compressed Sale Process and Delayed Removal Structure Undermine the Debtor's Assertion That the Proposed Transaction Maximizes Value

24. The Debtor seeks approval of a highly compressed sale process culminating in a sale hearing on October 26, 2026, and a closing no later than October 28, 2026. At the same time, however, the Debtor proposes to allow the successful purchaser sixty (60) additional days after closing to remove the Equipment from the Premises.

25. The inconsistency between the Debtor's representations at the September 23rd hearing and the structure of the proposed transaction is significant. At the September 23 hearing, the Debtor repeatedly emphasized the need for speed and urged the Court to permit access and sale efforts on an expedited basis. The premise of that argument was straightforward: delay destroys value and administrative expenses continue to mount.

26. Yet the transaction now before the Court does not meaningfully eliminate delay. Instead, it merely shifts the timing of that delay to the post-closing period by allowing the purchaser to keep the Equipment in place for an additional sixty (60) days. If ongoing delay truly threatens estate value, then there is no evident business justification for granting the purchaser an additional two months to remove the Equipment. Stated differently, the Debtor cannot simultaneously contend that an accelerated process is necessary because time is critical while proposing a sale structure that knowingly extends the burden on the estate and Lakeland Industrial for another sixty days after closing.

27. The proposed removal period benefits the purchaser but imposes substantial costs on the estate and Lakeland Industrial. During that period, Lakeland Industrial remains obligated to preserve the Equipment, maintain the Premises, facilitate access, and incur ongoing property-related expenses, all of which continue to accrue as administrative expenses.

28. The Court's obligation under § 363 is not merely to approve a sale, but to approve a sale that maximizes value. A transaction structure that unnecessarily prolongs administrative expense accruals directly undermines that objective.

### C. <u>The Deposit is Inadequate Given the Purchase Price and Market Standards</u>

29. The proposed purchaser's deposit is woefully inadequate. The stalking horse bidder is required to provide only a $50,000 earnest money deposit on a $2,200,000 acquisition, representing approximately 2.27% of the purchase price. That amount is well below what is

customarily required in significant asset acquisitions and bankruptcy sale procedures. Commercial transactions, including those in the restructuring market typically require deposits of 10% of the purchase price to demonstrate financial commitment and wherewithal to close. A 10% deposit would equal $220,000. By contrast, the proposed $50,000 deposit provides minimal assurance of performance and affords little protection to the estate and Lakeland Industrial against the substantial costs and delays that would result if the purchaser fails to close.

30. This concern is magnified by the sixty-day post-closing removal period. The estate and Lakeland Industrial are effectively being asked to bear the risks associated with continued storage, preservation, access, utilities, insurance, and property expenses which accrue at approximately $100,000 per month while the purchaser commits only 2.27% of the purchase price. The deposit will not even cover one month of administrative expense accrual.

### D. Once Administrative Costs Are Accounted For, The Proposed Sale Produces Little or No Meaningful Incremental Benefit Over the Prepetition Alternative

31. Lakeland Industrial's administrative expense claim accrues at no less than $99,352.24 per month and continues so long as the Equipment remains on the Premises. Those costs arise directly from preserving estate property and protecting Climate First Bank's collateral.

32. Through no fault of Lakeland Industrial, those expenses have continued to accrue since the August 20, 2026 Petition Date. Under the Sale Motion, they will continue accruing through the purchaser's proposed removal period following closing.

33. Assuming accrual through December 31, 2026, Lakeland Industrial's administrative expense claim approaches approximately $437,000. When those expenses are netted against the proposed $2,200,000 purchase price, the practical economic advantage of the proposed transaction is substantially diminished and eliminated almost entirely.

34. Prior to the Petition Date, Climate First Bank had already arranged an Article 9 disposition of the Equipment to Unibrew for approximately $1,700,000. Significantly, that transaction contemplated an in-place acquisition, immediate cessation of continuing storage-related expenses, elimination of removal costs, and a fifteen-year lease of the Premises.

35. Thus, the relevant comparison is not merely the difference between $2,200,000 and $1,700,000. Rather, the Court must evaluate the net economic result after accounting for hundreds of thousands of dollars of administrative expenses that continue to accrue solely because the Equipment remains at the Premises.

36. On the present record, the Debtor has not demonstrated that the proposed transaction will pay Climate First Bank, satisfy all accrued and accruing administrative claims, and provide a meaningful distribution to unsecured creditors. Absent such a showing, the Debtor has failed to establish that the sale produces a genuine benefit to the estate sufficient to warrant approval under § 363(b).

## CONCLUSION

Lakeland Industrial does not oppose a prompt sale that satisfies Climate First Bank's secured claim, pays all allowed administrative expenses in full, and provides a meaningful net benefit to unsecured creditors. The proposed stalking horse transaction, however, fails to satisfy those objectives because: (i) the proposed purchase price is substantially below the Debtor's own appraised value; (ii) the Debtor has not demonstrated that sale proceeds will be sufficient to satisfy Climate First Bank and all administrative claims in full; (iii) the transaction unnecessarily prolongs the accrual of substantial administrative expenses by allowing the purchaser sixty (60) days after closing to remove the Equipment from the Premises; and (iv) the deposit is woefully inadequate

and does not protect the estate against even one month of administrative expense accrual. Accordingly, the Sale Motion should be denied in its present form.

Alternatively, if the Court is inclined to approve a sale, Lakeland Industrial requests that approval be conditioned upon: (a) timely payment of Lakeland Industrial's accrued and accruing administrative expense claim; (b) a firm and substantially shortened removal deadline; and (c) a deposit of at least ten percent (10%) of the purchase price to protect against the accrual of administrative expense claims; and (d) such other and further relief as the Court deems just and proper.

Dated: October 6, 2026.

**BERGER SINGERMAN LLP**
Counsel for Lakeland Industrial 1 LLC,
Lakeland Industrial 2 LLC, Lakeland Industrial 3
LLC, and Lakeland Industrial 4 LLC
101 E. Kennedy Boulevard, Suite 1165
Tampa, FL 33602
Tel. (813) 498-3400

By: *_/s/ Amy Denton Mayer_*
Amy Denton Mayer
Florida Bar No. 634506
amayer@bergersingerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2026, a true and correct copy of the foregoing was served by electronic transmission through the Court's CM/ECF System upon all parties on the below Service List, and by first class, U.S. Mail upon all parties listed below and on the attached Local Rule 1007-2 Parties in Interest List, to the extent that such parties were not served electronically through the Court's CM/ECF system.

By: /s/ Amy Denton Mayer
Amy Denton Mayer

## CM/ECF SERVICE LIST

Scott E. Bomkamp, scott.e.bomkamp@usdoj.gov

John M. Brennan, jack.brennan@gray-robinson.com

Alan R. Crane, alan.crane@gray-robinson.com

Jonathan T. Crane, jonathan.crane@gray-robinson.com

Justin M. Luna, jluna@lathamluna.com

Michael C. Markham, mikem@jpfirm.com

Amy Denton Mayer, amayer@bergersingerman.com

United States Trustee – TPA, USTPRegion21.TP.ECF@USDOJ.GOV

Label Matrix for local noticing
113A-8
Case 8:26-bk-07442-LER
Middle District of Florida
Tampa
Tue Oct 6 10:33:50 EDT 2026

AllBev LLC
1901 FM 546
Suite 200
McKinney, TX 75069-1271

BFG Corporation -
2801 Lakeside Drive
Suite 212
Deerfield, IL 60015-1200

Breakout Capital, LLC
c/o Francis Morency, Esq.
201 N. Franklin St., Suite 3200
Tampa, FL 33602-5872

CT Corporation System
330 N Brand Blvd.
Suite 700
Glendale, CA 91203-2336

Climate First Bank
182 37th Ave. N
Saint Petersburg, FL 33704-1401

Corporation Service Company
PO Box 2576
Springfield, IL 62708-2576

Crown Equipment Corporation -
44 S. Washington Street
New Bremen, OH 45869-1288

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee, FL 32314-6668

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Lakeland Industrial 1 LLC
c/o Laurence Legal
215 N. Federal Highway
Dania Beach, FL 33004-2805

Sea Isle Spiked Iced Tea, LLC
c/o South Florida Law PLLC
1920 E. Hallandale Beach Blvd.
Suite 702
Hallandale, FL 33009-4725

ServPro of Lakeland, Inc.
c/o GrayRobinson, P.A.
ATTN: Jack M. Brennan, Esq.
301 E. Pine Street, Suite 1400
Orlando, FL 32801-2798

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
--------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 12 |
| Bypassed recipients | 1 |
| Total | 13 |