**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 8:26-bk-07442-LER** |
| | **CHAPTER 11** |
| **GREAT SOUTHERN COPACKERS** | ***Subchapter V Election*** |
| **LLC *aka Great Southern Beverages*,** | |

_____________________________________/

**DEBTOR'S OBJECTION TO APPLICATION FOR ALLOWANCE AND PAYMENT OF MONTHLY ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)**
**(Doc. No. 43)**

**GREAT SOUTHERN COPACKERS LLC a/k/a GREAT SOUTHERN BEVERAGES** (the "Debtor"), by and through its undersigned counsel, hereby Objects to the *Application for Allowance and Payment of Monthly Administrative Expense Claim Under 11 U.S.C. § 503(b)* (Doc. No. 43) (the "Application") filed by Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC (collectively, the " Landlord"). In support, the Debtor states as follows:

**PRELIMINARY STATEMENT**

1. Landlord asserts it terminated its relationship with the Debtor before the Petition Date: it obtained a Default Final Judgment for Commercial Eviction and a Writ of Possession on July 14, 2026, and the Polk County Sheriff turned the Premises over to it on August 18, 2026. However, what is missing from these facts are that the Landlord procured such eviction and writ of possession by representing to the Debtor that if they left without issue and allowed the formal eviction process to be resolved it would allow the Debtor to finish its existing production, remove its equipment and inventory and not charge rent or other charges through the end of October 2026.

Having retaken the Premises for its own account and depriving the Debtor of the deal it has specifically negotiated, the Former Landlord now asks the Court to award it, as a priority administrative expense, the full contract rent under the terminated Lease, plus real estate taxes, insurance, estimated utilities, common area maintenance, and uncapped hourly property-management charges—$99,352.24 per month plus additional fees—and to compel the Debtor to pay that amount monthly, retroactive to the Petition Date.

2. The Application should be denied. Section 503(b)(1)(A) does not permit a former landlord to recover the rent it bargained for under a lease that no longer exists. It allows only the actual and necessary costs of preserving the estate, measured by the concrete benefit actually conferred on the estate, and the claimant bears the burden of proving each element. Furthermore, based on the representations of the Landlord, it has already waived any such claim for such charges through the end of October 2026. The Application offers no evidence of any of those elements. It substitutes the Lease rate, prior-year tax figures, and an admitted "estimate" of utilities for proof of actual, necessary costs; it seeks recovery of the Former Landlord's own costs of owning its building, which it would incur whether or not any estate property remained on site; and it asks the Court to compel immediate monthly payment without any showing that such extraordinary relief is warranted.

## BACKGROUND

3. On August 20, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V.

4. On September 1, 2026, the Debtor filed its Emergency Motion to Compel the Landlord to Provide Immediate Access to the Premises and Turnover Property of the Estate

[Doc. No. 24] (the "Turnover Motion"). The purpose was to secure and remove its property immediately. The Landlord refused to allow the Debtor to operate, refused to allow the Debtor to remove the equipment and essentially caused its own undoing. Following a hearing on September 9, 2026, an Agreed Interim Order granting the Turnover Motion in part on an interim basis and deferring it in part (the "Agreed Order") was submitted, which directs the Former Landlord to provide the Debtor with access to the Premises for limited purposes and reserves the Former Landlord's right to seek an administrative expense claim. It does not allow the Debtor to operate and realize the full benefit of the premises.

5. On September 16, 2026, the Former Landlord filed the Application, seeking an administrative claim of $99,352.24 per month, plus hourly charges of $150 per hour for Property Manager visits and $100 per hour for Maintenance Technician visits billed by Cushman & Wakefield, effective as of the Petition Date. Exhibit A to the Application breaks down that figure as follows:

| **Category** | **Amount Claimed** | **Basis Stated in Exhibit A** |
|---|---|---|
| Building Rent | $65,233.34 | "based on rate in Lease" |
| Real Estate Taxes | $12,111.86 | "based on previous year" |
| Insurance | $5,500.00 | "actual" |
| Utilities | $15,000.00 | "estimated" |
| Industrial Park Monthly CAM | $1,507.04 | "actual" |
| Facility Management | Unliquidated | Hourly ($150 / $100) Cushman & Wakefield charges |
| **Total** | **$99,352.24 plus fees** | |

6. The proposed order attached as Exhibit B to the Application would require the Debtor to pay the Monthly Administrative Claim for the period from August 20, 2026 through

September 30, 2026 within ten days of entry, and thereafter by the tenth day of each month until further order of the Court.

## OBJECTION

### A. The Former Landlord Bears the Burden of Proving an Actual, Necessary Benefit to the Estate.

7. Section 503(b)(1)(A) allows as administrative expenses only "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). As the Former Landlord itself acknowledges, an administrative claim must be "actual" and "necessary" and must "provide a concrete benefit to the debtor's estate." (quoting *In re EZ Pay Servs. Inc.*, 380 B.R. 861, 864 (Bankr. M.D. Fla. 2007), and citing *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir. 1986).

8. Because administrative priority depletes the estate available to all other creditors, priority statutes are narrowly construed, and the party seeking administrative priority bears the burden of proving entitlement to it by a preponderance of the evidence. The Application is unverified and is supported by no declaration, invoice, utility bill, tax bill, insurance statement, or other evidence. A one-page schedule of contract rates and estimates does not carry that burden.

### B. The Landlord Cannot Recover Contract Rent Under a Terminated Lease.

9. The Landlord concedes that it obtained a final judgment of possession and a writ of possession, and that the Premises were turned over to it before the Petition Date. The Application nonetheless prices its claim at "Building Rent" of $65,233.34 per month "based on rate in Lease." The Lease rate is not evidence of any cost incurred to preserve estate property, much less of the reasonable value of any benefit to the estate. The Former Landlord

is not a post-petition lessor, and it cannot use section 503(b)(1)(A) to restore the economic benefit of a lease it chose to terminate.

10. At most, any allowable claim must be measured by the reasonable value of the space actually occupied by estate property and actually used by the estate, for the period it is actually used—not by the rent for the entire facility. The Application does not identify the square footage of the Premises actually occupied by the Debtor's, the portion occupied by the Assets, whether the Former Landlord has relet or is marketing or otherwise using the Premises, or the market value of comparable storage.

### C. Taxes, Insurance, CAM, and Utilities Are the Former Landlord's Own Ownership Costs and Are Not Proven.

11. Real estate taxes, property insurance, and industrial park common area maintenance charges are costs of owning the Premises. The Former Landlord would incur them whether or not a single item of estate property remained on site. They are not costs "of preserving the estate," and the Application makes no attempt to show that any portion of them is attributable to the Assets rather than to the Former Landlord's ownership of its real property.

12. Moreover, several components are, by the Former Landlord's own description, not "actual." Real estate taxes are "based on previous year," and utilities are "estimated" at $15,000.00 per month. (Application Ex. A.) Section 503(b)(1)(A) permits only actual costs. An estimate of $15,000 per month in utilities for a facility from which the Debtor's operations have been locked out since August 18, 2026 is unsupported on its face, and the Former Landlord offers no utility bills or any explanation of what utility service, if any, is necessary to preserve the Assets.

**D. The Uncapped Hourly Facility Management Charges Should Be Disallowed.**

13. The Application also seeks an unliquidated, open-ended claim for hourly Cushman & Wakefield charges of $150 per hour for Property Manager visits and $100 per hour for Maintenance Technician visits. The Application does not describe what services are performed, how often, by whom, or why any of them is necessary to preserve the Assets rather than to manage the Landlord's building. An administrative claim cannot be allowed in an undetermined amount on the strength of an hourly rate alone, and the proposed order would effectively authorize the Former Landlord to set the size of its own priority claim. These charges should be disallowed or, at a minimum, deferred until the Former Landlord files itemized, supported requests.

**E. The Former Landlord Has Not Shown a Concrete Benefit to the Estate, as Distinct from a Benefit to Itself or the Secured Lender.**

14. The Application asserts in conclusory fashion that, absent the Former Landlord's "efforts to preserve, secure, store, and maintain the Assets," the Assets would deteriorate. It identifies no specific preservation effort it has undertaken. Since obtaining possession, the Former Landlord has held the Premises for its own account and controlled access to them; the Debtor sought this Court's intervention merely to obtain access to its own property. Costs incurred by a party for its own benefit, or as a consequence of its own exercise of state-law remedies, are not costs of preserving the estate.

15. In addition, the Application acknowledges that Climate First Bank (the "Bank") asserts liens against some or all of the Assets. To the extent storage of the Assets preserves the Bank's collateral, the benefit runs in the first instance to the Bank, and any appropriate charge for preserving that collateral should not be imposed on the unsecured estate as a priority claim without consideration of the Bank's share of the benefit. The Debtor reserves the right to surcharge the Bank's collateral under 11 U.S.C. § 506(c).

**F. There Is No Basis to Compel Immediate Monthly Payment.**

16. Even if some administrative claim were allowed, nothing in section 503(b) requires its immediate payment. The timing of payment of allowed administrative expenses is a matter committed to the Court's discretion, and administrative claims are ordinarily paid on the effective date of a confirmed plan. See 11 U.S.C. §§ 1129(a)(9)(A), 1191(e). In Subchapter V specifically, Congress permitted a nonconsensual plan to provide for payment of administrative claims over the life of the plan. 11 U.S.C. § 1191(e). Compelling the Debtor to pay nearly $100,000 per month—plus a lump sum covering August 20 through September 30, 2026 within ten days—would divert scarce liquidity from the orderly sale process that the Landlord itself recognizes is intended to maximize value "for the benefit of all stakeholders." The Landlord has shown no prejudice warranting priority treatment ahead of other administrative claimants.

**G. The Request for Dismissal or Stay Relief Is Not Properly Before the Court.**

17. Paragraph 16 of the Application asserts that, if the Debtor cannot timely pay the Monthly Administrative Claim, "cause exists" for dismissal of this case or for granting the Bank's Motion for Relief from the Automatic Stay [Doc. No. 32]. Neither form of relief is requested in the Application's prayer for relief or in the proposed order, and neither has been properly noticed. Any request for dismissal under 11 U.S.C. § 1112(b) must be brought by separate motion on appropriate notice, and the Bank's stay relief motion should be decided on its own record. The Court should disregard paragraph 16.

**H. Reservation of Rights and Request for Evidentiary Hearing.**

18. To the extent the Court does not deny the Application outright, the Debtor requests an evidentiary hearing and an opportunity to conduct discovery regarding the Former Landlord's actual costs, the space actually occupied by the Assets, the Former Landlord's use and marketing

of the Premises, the circumstances and facts of the Landlord's representations to the Debtor regarding use of the premises through October in exchange for consenting to the eviction process and the reasonable value of any storage. The Debtor reserves all rights, claims, and defenses, including with respect to the Lease, the State Court judgment, the Turnover Motion and the Agreed Order, any claims of the Former Landlord, and any claims of the estate against the Former Landlord, and reserves the right to supplement this Objection.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order (i) sustaining this Objection; (ii) denying the Application; (iii) alternatively, setting an evidentiary hearing and limiting any allowed administrative claim to the actual, necessary, and proven costs of preserving estate property, measured by the reasonable value of the space actually occupied, with payment deferred to plan confirmation or further order of the Court; and (iv) granting such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this October 13th, 2026

*/s/ Justin M. Luna*
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
Bknotice1@lathamluna.com
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

**In re:** **CASE NO.: 8:26-bk-07442-LER**

**CHAPTER 11**

**GREAT SOUTHERN COPACKERS LLC** ***aka Great Southern Beverages*****,** ***Subchapter V Election***

_________________________________/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: G**reat Southern Copackers LLC**, 3900 Frontage Rd. S, Lakeland, FL 33818; **Berger Singerman LLP, c/o Amy Denton Mayer,** 101 E. Kennedy Boulevard, Suite 1165, Tampa, Florida 33602, amayer@bergersingerman.com; all interested parties as shown on the matrix attached; all parties receiving CM/ECF service in this case; **Subchapter V Trustee Michael C. Markham**, 400 N. Ashley Drive, Suite 3100, Tampa, Florida 33602; and the **Office of the United States Trustee**, 501 E Polk Street, Tampa, Florida 33602; this 13th day of October, 2026.

/s/ Justin M. Luna
Justin M. Luna, Esq.