**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: **Case No. 8:26-bk-07442-LER**

**GREAT SOUTHERN COPACKERS LLC** Chapter 11, Subchapter V
a/k/a Great Southern Beverages,

Debtor.
_______________________________________/

# FORMER LANDLORD'S MOTION TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b)

Lakeland Industrial 1 LLC, Lakeland Industrial 2 LLC, Lakeland Industrial 3 LLC, and Lakeland Industrial 4 LLC, as tenants in common (collectively, "Lakeland Industrial" or the "Former Landlord"), by and through undersigned counsel, move this Court, pursuant to 11 U.S.C. § 1112(b) and Federal Rule of Bankruptcy Procedure 1017, for entry of an order dismissing the above-captioned Chapter 11 case of Great Southern Copackers LLC a/k/a Great Southern Beverages (the "Debtor"). In support, Lakeland Industrial states as follows:

## PRELIMINARY STATEMENT

This bankruptcy case has transformed Lakeland Industrial into an involuntary warehouseman for the Debtor's assets. Although Lakeland Industrial lawfully regained possession of the Premises before the Petition Date through a state-court eviction proceeding, the Debtor's equipment remains stored throughout the facility, preventing Lakeland Industrial from re-letting the property and mitigating its damages. Meanwhile, the Debtor disputes its obligation to compensate Lakeland Industrial at the full rate necessary to account for the continuing storage, occupancy, risk, and lost leasing opportunity imposed by the Debtor's decision to leave its assets in place.

This is neither a reorganization case nor a value-maximizing liquidation. The Debtor does not operate. It was dispossessed of its only business premises two days before filing its petition and has conducted no business operations since. Its principal assets consist almost entirely of collateral subject to the liens of Climate First Bank (the "Bank"), and the sole apparent purpose of this case is to pursue a liquidation of that collateral at a price the Debtor cannot demonstrate will satisfy secured claims and the mounting administrative expenses generated by the bankruptcy itself, much less produce a meaningful recovery for unsecured creditors.

The timing and circumstances of the filing reveal its true purpose. Having lost possession of the Premises under applicable non-bankruptcy law, the Debtor invoked Chapter 11 in a last-ditch effort to obtain leverage it no longer possessed outside bankruptcy and to impede the exercise of state-law rights by both the Bank and Lakeland Industrial. Rather than rehabilitate a business, the Debtor has used the bankruptcy process to preserve optionality while negotiating a sale transaction that may provide future economic opportunities for insiders, notwithstanding the steadily deteriorating financial condition of the estate. Chapter 11 exists to rehabilitate businesses and maximize value for creditors, not to create bargaining leverage, preserve non-existent possessory rights, or shift the costs of a liquidation strategy onto non-debtor parties.

Meanwhile, the estate continues to bleed value. Lakeland Industrial has filed an administrative expense claim of $99,352.24 per month, accruing from the Petition Date and projected to exceed approximately $437,000 by year-end, merely to preserve and store the Debtor's equipment on premises the Debtor no longer possesses. Professional fees continue to accrue on top of that amount. Every additional day this case remains pending increases the administrative burden on an estate that has no demonstrated ability to satisfy those obligations and further diminishes any prospect of a meaningful distribution to unsecured creditors.

Cause therefore exists on multiple grounds under 11 U.S.C. § 1112(b). The estate is suffering continuing loss and diminution with no reasonable likelihood of rehabilitation. There is no operating business to rehabilitate, no realistic prospect of a confirmable plan, and no evidence that the Debtor's proposed sale process will generate proceeds sufficient to satisfy administrative expenses and secured claims in full. Instead, the petition functions primarily as a litigation tactic that delays the Bank's enforcement of its rights, prevents Lakeland Industrial from re-letting its property, and preserves negotiating leverage for insiders while administrative expenses continue to mount. Because the Debtor possesses few, if any, unencumbered assets for a Chapter 7 trustee to administer, dismissal, rather than conversion, is plainly in the best interests of creditors and the estate.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested is 11 U.S.C. § 1112(b).

## FACTUAL BACKGROUND

### I. The Lease, the Default, and the Prepetition Dispossession

5. On or about May 9, 2025, the Debtor and the Former Landlord entered into a lease (the "Lease") for the property at 3900 Frontage Road S, Lakeland, Florida 33815 (the "Premises").

6. The Debtor defaulted under the Lease by failing to pay rent, and on June 11, 2026 the Former Landlord commenced an eviction proceeding in the County Court of the Tenth Judicial Circuit, in and for Polk County, Florida (Case No. 2026CC006543A000BA).

7. On July 14, 2026, the State Court entered a Default Final Judgment for Commercial Eviction in favor of the Former Landlord and issued a Writ of Possession.

8. On or about August 18, 2026, the Polk County Sheriff changed the locks on the Premises and turned the Premises over to the Former Landlord. The Former Landlord was in possession of the Premises before this case was filed.

9. On August 20, 2026 (the "Petition Date") — two days after being dispossessed — the Debtor filed its voluntary petition and elected to proceed under Subchapter V.

10. Although Lakeland Industrial regained possession of the Premises through a duly issued state court writ of possession before the Petition Date, the Debtor's Equipment remains stored throughout the Premises. As a practical matter, Lakeland Industrial cannot market or deliver possession of the Premises to a replacement tenant while the Equipment remains in place. Thus, despite having lawfully recovered possession prepetition, Lakeland Industrial remains deprived of the beneficial use of its property and is prevented from mitigating its damages through re-letting the Premises. The bankruptcy filing has therefore imposed upon Lakeland Industrial the burdens and risks associated with warehousing the Debtor's assets without adequate compensation or assurance of payment.

## II. The Debtor Is Not Operating

11. The Debtor does not conduct business. Its production and brewing equipment (the "Equipment") remains inside Lakeland Industrial's Premises, to which the Debtor has no rights except for limited access pursuant to an agreed order between the Debtor and Lakeland Industrial, which was entered by the Court. *See* Doc. 49.

12. The Debtor's own Monthly Operating Report confirms the absence of operations. For the period August 20–31, 2026, the Debtor reported net cash flow of negative $49,241.26, zero

receivables, and no projected net cash flow for the following month. *See* Doc. 66. Its cash declined from $157,751.11 at the Petition Date to $108,509.85 by month-end. *See id.*

## III. <u>The Debtor has Few, If Any, Unencumbered Assets</u>

13. The Debtor's schedules report total assets of $4,614,617.10, all personal property (no real property). Summary of Assets and Liabilities. *See* Doc. 46. The overwhelming majority of that value is machinery and equipment ($3,231,050.00) and inventory ($1,254,758.79). *See id.*

14. The Equipment and inventory are the Bank's collateral. The Debtor acknowledges that the Bank asserts liens against some or all of the Assets and that it commenced this case in significant part, to preserve, market, and maximize the value of the Assets through an orderly sale process.

15. The Debtor scheduled secured claims of $1,861,636.43 and nonpriority unsecured claims of $1,853,361.36, with no priority unsecured claims. *See id.*

16. In addition, although not listed on the bankruptcy schedules, (a) the Florida Secured Transaction Registry reflects a lien in favor of David Booth on the Debtor's equipment package located at 3900 Frontage Road S Lakeland FL 33815[1]; and (b) Jeremy Roberts, the Debtor's principal, testified at the Section 341 meeting of creditors that the Debtor is indebted to YUCUCUA, the holding company of the Debtor's predecessor, in the amount of $11.5 million, which is liquidated and not contingent and upon information and belief is secured by substantially all assets of the Debtor.

## IV. <u>The Estate Is Accruing Administrative Expenses It Cannot Pay</u>

17. On September 16, 2026, Lakeland Industrial sought allowance of a monthly administrative expense claim of $99,352.24 per month, effective as of the Petition Date,

[1] See Florida UCC-1 202502254440.

comprising building rent ($65,233.34), real estate taxes ($12,111.86), insurance ($5,500.00), utilities ($15,000.00), and CAM ($1,507.04), plus hourly Cushman & Wakefield facility-management charges — and directing the Debtor to pay that amount monthly. *See* Doc. 43.

18. These preservation and storage costs continue to accrue through a sale or other disposition of the Equipment and approach approximately $437,000 through year-end 2026. *See id.* The Debtor's and the Subchapter V Trustee's professional fees continue accrue as well.

## V. **<u>The Proposed Sale is Not Guaranteed to Pay Administrative Claims in Full, Let Alone Provide a Distribution to Unsecured Creditors</u>**

19. On September 25, 2026, the Debtor filed a motion seeking to sell the Equipment free and clear under 11 U.S.C. § 363, designating E-Town Marketing & Distributing, LLC as stalking horse purchaser at a price of $2,200,000. *See* Doc. 61. That price is approximately $448,750 below the Debtor's own net orderly liquidation value ($2,648,750) and more than $1,000,000 below its gross orderly liquidation value ($3,231,050).

20. The proposed sale permits the purchaser to leave the Equipment on the Premises for up to sixty (60) days after closing, thereby extending the very administrative expenses that have rendered this case increasingly insolvent. Unlike the prepetition Article 9 transaction negotiated by the Bank with Unibrew for approximately $1.7 million, which contemplated an in-place sale of the Equipment and a new fifteen-year tenancy, the Debtor's proposed sale prolongs the estate's administrative burn while continuing to prevent Lakeland Industrial from re-letting the Premises. Accordingly, any apparent increase in purchase price is largely illusory, as the additional value is consumed by expenses that exist solely because of the bankruptcy filing and the Debtor's decision to keep the Equipment in place.

21. The Sale Motion conspicuously avoids representing that sale proceeds will be sufficient to satisfy all administrative expenses and lien claims in full. Indeed, based upon the

proposed purchase price, the currently asserted liens, Lakeland Industrial’s accruing administrative expense claim, and continuing professional fees, the estate appears administratively insolvent. As a consequence, the very process the Debtor invokes to purportedly maximize value is consuming value that cannot realistically be recovered.

## **ARGUMENT**

### I. **Cause Exists to Dismiss This Case Under 11 U.S.C. § 1112(b)**

22. Section 1112(b)(1) provides that, on request of a party in interest and after notice and a hearing, the court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). The movant bears the burden of establishing cause by a preponderance of the evidence. *In re Bal Harbour Club, Inc.,* 316 F.3d 1192, 1195 (11th Cir. 2003); *see In re Ebury St. Cap., LLC,* 666 B.R. 627, 631 (Bankr. M.D. Ala. 2024). Once cause is shown, dismissal or conversion is mandatory unless a narrow exception applies, and "one cause is enough." *In re Ebury St. Cap., LLC,* 666 B.R. at 632.

23. Section 1112(b)(4) sets out a non-exhaustive list of what constitutes "cause." 11 U.S.C. § 1112(b)(4). In addition to the enumerated grounds, a court may dismiss for the debtor's lack of good faith in filing. *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984). As set forth below, multiple independent grounds for cause are present here.

### II. **The Estate Is Suffering Continuing Loss and Diminution With No Reasonable Likelihood of Rehabilitation. § 1112(b)(4)(A)**

24. Section 1112(b)(4)(A) defines cause to include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Both elements are satisfied.

25. Continuing loss and diminution are established by mounting, unpaid administrative expenses. In *In re Blunt*, the court found a continuing loss to or diminution of the estate under § 1112(b)(4)(A) "evidenced by mounting unpaid administrative expenses, deferred maintenance, an absence of a reasonable likelihood of rehabilitation, and an unreasonable delay by Debtors that is prejudicial to the creditors of the Estate." *In re Blunt,* 236 B.R. 861, 865 (Bankr. M.D. Fla. 1999).

26. Here, the estate is accruing an administrative expense of $99,352.24 per month for preservation and storage alone — approaching $437,000 by year-end — on top of accruing, unpaid professional fees of Debtor’s counsel and the Subchapter V Trustee. The Debtor's negative net cash flow and dwindling cash balance confirm the estate is shrinking, not stabilizing.

27. This Chapter 11 case has effectively transformed Lakeland Industrial's facility into a court-supervised storage warehouse for the Debtor's assets. The Debtor seeks to preserve optionality while shifting the economic consequences of that decision onto Lakeland Industrial. Every additional day the case remains pending increases the Former Landlord's uncompensated risk while diminishing the likelihood that administrative claims will ever be paid.

28. There is no reasonable likelihood of rehabilitation. The Debtor does not operate, has been dispossessed of its only business location, generates no meaningful revenue, proposes only to liquidate the Bank’s collateral and negotiate an agreement with a potential purchaser for the benefit of the Debtor’s principal.

29. *In re First Federal Corp.* is directly on point: the court converted a Chapter 11 case for cause where the debtor "no longer maintains any operating force; it no longer sells anything, and lacks viable means to reorganize its affairs and resume the operation of any business in the conventional sense," and "is about to lose one of its major assets" to its secured creditor. *In re First Fed. Corp.,* 50 B.R. 417, 419 (Bankr. M.D. Fla. 1985).

30. That is this case. A debtor that neither operates nor can resume operations, whose sole activity is the sale of its lender's collateral without paying lien and administrative claims, cannot rehabilitate within the meaning of § 1112(b)(4)(A).

## III. **<u>There Is No Reasonable Likelihood of a Confirmable Plan</u>**

31. Cause also exists because the Debtor cannot effectuate a confirmable plan. A Chapter 11 case should not continue where the debtor has "no ability to effectuate a Chapter 11 plan capable of confirmation." *In re Blunt,* 236 B.R. at 866. Where a debtor is not operating, generates no cash flow, and lacks the "core for a workable plan of reorganization," dismissal for cause is warranted. *Id.*

32. The Debtor has no going concern, no operating revenue, and few if any unencumbered assets. Any plan would depend entirely on the proceeds of selling the Bank's collateral — proceeds the Debtor has not shown will even cover secured and administrative claims in full. A case that cannot pay its administrative expenses cannot satisfy the requirements for confirmation. *See* 11 U.S.C. 1129(a)(9)(A). The absence of any realistic path to confirmation is itself cause to dismiss.

## IV. **<u>The Petition Delays and Frustrates the Bank's and Lakeland Industrial's Enforcement of Their Rights</u>**

33. The Eleventh Circuit permits dismissal under § 1112 where a petition was not filed in good faith, and courts "may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988) (quoting *In re Albany Partners, Ltd.,* 749 F.2d at 674). Dismissal "is particularly appropriate" where "there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to

delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Albany Partners, Ltd.,* 749 F.2d at 674.

34. Several of the circumstantial indicia the Eleventh Circuit identified in *In re Phoenix Piccadilly* are present here: the Debtor's value is concentrated in assets encumbered by the Bank; the dispute is largely a contest between the Debtor and the Bank over the disposition of that collateral; and the timing of the filing — two days after the Debtor was locked out and on the heels of the Bank's arranged Article 9 disposition to Unibrew — evidences an intent to interrupt and frustrate the Bank's enforcement of their rights. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394–95.

35. The bankruptcy filing halted a prepetition disposition that would have: (a) paid the Bank in full, (b) eliminated ongoing storage costs, and (c) delivered a long-term tenant to Lakeland Industrial, and replaced it with a lower-net sale that merely accrues and prolongs payment of administrative expenses. The filing has likewise frustrated Lakeland Industrial's legitimate state-law rights. Prior to the Petition Date, Lakeland Industrial had completed the eviction process, obtained possession of the Premises, and stood ready to market and re-let the property. The petition has effectively frozen that process by leaving the Debtor's Equipment in place while disputes continue regarding compensation for storage. The result is that Lakeland Industrial bears the economic burden of preserving estate property while being deprived of the opportunity to generate replacement rental income. Lakeland Industrial is being compelled to shoulder the burdens associated with storing millions of dollars of estate property at its facility while receiving neither current payment nor any assurance that its administrative claim will ultimately be satisfied. The Bankruptcy Code was not intended to require a former landlord to involuntarily finance a debtor's liquidation and litigation strategy for the benefit of the principal at the former landlord's expense.

36. The possibility of a successful liquidation cannot transform a bad faith filing into one undertaken in good faith. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1395.

## I. Dismissal, Rather Than Conversion, Is in the Best Interests of Creditors and the Estate

37. Once cause is established, the Court must dismiss or convert, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). There is no bright-line test; the determination is committed to the Court's discretion and guided by factors including whether conversion would maximize the estate's value, whether a Chapter 7 trustee could reach assets for creditors, whether the estate is effectively a single pool of encumbered assets, and whether remaining disputes are better resolved outside bankruptcy. *In re Ebury St. Cap., LLC,* 666 B.R. at 632–33.

38. Here, those factors favor dismissal. The Debtor's assets are the Bank's collateral, and little or no unencumbered value exists for a Chapter 7 trustee to administer for the benefit of unsecured creditors. Converting the case would only layer a second set of administrative expenses — a trustee, trustee's counsel, and continued preservation costs — onto an estate that already cannot pay the administrative claims it has generated. Dismissal therefore best serves creditors and the estate.

## II. No "Unusual Circumstances" Exception Applies

39. Section 1112(b)(2) bars dismissal only where the Court specifically identifies unusual circumstances establishing that dismissal is not in the best interests of creditors and the estate, and the debtor establishes both a reasonable likelihood of confirmation within a reasonable time and — for grounds other than § 1112(b)(4)(A) — a reasonably justified, timely-curable act or omission. 11 U.S.C. § 1112(b)(2). The cure safe harbor is expressly unavailable for § 1112(b)(4)(A) grounds. *Id.*

40. The Debtor cannot carry that burden. It cannot show a reasonable likelihood of confirmation within a reasonable time where it does not operate, has no going concern, and proposes only to liquidate encumbered assets at a price insufficient to pay administrative claims in full. A debtor whose only path forward is liquidation, with no plan capable of confirmation, does not satisfy the § 1112(b)(2) exception, and that a Chapter 11 debtor intends to liquidate rather than reorganize is not itself an "unusual circumstance." *In re Ebury St. Cap., LLC,* 666 B.R. at 632–34.

## CONCLUSION

More than seven weeks after filing, the Debtor remains non-operational, possesses no realistic prospect of rehabilitation, and can identify no pathway by which administrative claims will be paid in full. The estate continues to incur administrative expenses at a rate exceeding $99,000 per month merely to store collateral that the Debtor no longer has the ability to use. The Bankruptcy Code does not permit a debtor to warehouse secured collateral indefinitely at a former landlord's expense while pursuing speculative sale opportunities that principally benefit insiders. Cause exists, dismissal is mandatory, and dismissal rather than conversion is plainly in the best interests of creditors and the estate.

WHEREFORE, Lakeland Industrial respectfully requests that the Court enter an order (i) dismissing this Chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b); and (ii) granting such other and further relief as the Court deems just and proper.

Dated: October 14, 2026.

**BERGER SINGERMAN LLP**
Counsel for Lakeland Industrial 1 LLC,
Lakeland Industrial 2 LLC, Lakeland Industrial 3
LLC, and Lakeland Industrial 4 LLC
101 E. Kennedy Boulevard, Suite 1165
Tampa, FL 33602
Tel. (813) 498-3400

By: */s/ Amy Denton Mayer*
Amy Denton Mayer
Florida Bar No. 634506
amayer@bergersingerman.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 14, 2026, a true and correct copy of the foregoing was served by electronic transmission through the Court's CM/ECF System upon all parties on the Service List below.

By: */s/ Amy Denton Mayer*
Amy Denton Mayer

**CM/ECF SERVICE LIST**

Scott E. Bomkamp, scott.e.bomkamp@usdoj.gov

John M. Brennan, jack.brennan@gray-robinson.com

Alan R. Crane, alan.crane@gray-robinson.com

Jonathan T. Crane, jonathan.crane@gray-robinson.com

Justin M. Luna, jluna@lathamluna.com

Michael C. Markham, mikem@jpfirm.com

Amy Denton Mayer, amayer@bergersingerman.com

United States Trustee – TPA, USTPRegion21.TP.ECF@USDOJ.GOV